ADOLPHUS BUSCH v. ELLA HALL, JOHN HALL, DAISY HALL AND W. C. BROWN, Appellants.

Action to Redeem From Tax Sale: SERVICE OF ARGUMENT: WAIVER OF RIGHT TO OPEN. Under Supreme Court Rule 39 (Code, section 2156), where the appellee has the burden, though he does not waive his right to open by serving the proper notice, yet failure to file argument thirty days before hearing can be treated as a waiver, and appellant, having filed his argument ten days before the hearing, appellee may reply three days before the hearing and have the cause submitted at that term.

Tax Sale: WHO MAY REDEEM: MANNER OF: The holder of a
mortgage has such an interest in land as will entitle him to
redeem from a tax sale prior to the issuance of a valid tax
deed.

Right of Redemption: WHEN TERMINATED. This right of redemp-
tion terminates ninety days after completed service of notice
of the expiration of the period of redemption, as provided in
Code, section 1441, and not upon issuance of the treasurer's
deed.

Same: REDEMPTION WHERE NOTICE IS NOT GIVEN: SECTIONS 1440
AND 1445 DISTINGUISHED. Where a tax deed has issued and the
notice prescribed by section 1441 has not been given, anyone
entitled to redeem before issuance of the deed may do so there-
after, under Code, section 1440, the provisions of section 1445
not being applicable in such a case. These sections and cases
thereunder discussed and distinguished.

Same: FRAUD IN PROCURING DEED: EVIDENCE. In this case the
tax deed issued upon proper notice, and plaintiff as mortgagee,
is not entitled to maintain an action to redeem thereafter, in
the absence of a showing that the deed was fraudulently ob-
tained. Evidence considered and held insufficient to show
fraud or to estop defendants from asserting title under the tax
deed.

*Appeal from Union District Court.*—HON. W. H. TEDFORD,
Judge.

THURSDAY, JANUARY 29, 1903.

ELLA Hall was the owner of lot 5 in Devoe's First ad-
dition to the city of Creston, and, with her husband, John
Hall, occupied it as their homestead. November 27, 1893,
they executed a mortgage thereon to secure their three
notes amounting to $2,500 to Adolphus Busch. No part of
this indebtedness has been paid, and, notwithstanding the
stipulation contained in the mortgage that the mortgagors
shall pay the taxes, these became delinquent, and a tax
deed was executed to W. H. Perrigo, the certificate holder,
January 13, 1898. Four days later Perrigo entered into a
written agreement with Daisy Hall, an unmarried daughter

of the mortgagors, who made her home with them, to convey the premises to her upon the payment of $562, with interest at the rate of eight per cent. per annum from December 18, 1897, at any time before April 1, 1898.  This was the amount which would have been necessary to redeem, with a small judgment against John Hall of about $50 and an insurance premium added.  February 10, 1898, Daisy Hall assigned this contract to W. C. Brown, and to him Perrigo conveyed the title March 26, 1898.  On the same day Brown contracted to convey the premises to her upon repayment at any time before March 28, 1900.  In August, 1898, the mortgagee tendered Brown the amount required to reimburse him, conceded to be sufficient to effect redemption, and, upon refusal to accept, this action was brought to redeem.  From a decree granting the relief prayed, defendants appeal.—*Reversed.*

*Sullivan & Sullivan* and *Hugh M. Fry* for appellants.

*Cummins, Hewitt & Wright* and *P. C. Winter* for ppellee.

LADD, J.—Appellants' abstract was filed December 3, 1901, and their argument September 2, 1902.  Appellee filed an amendment to the abstract September 12, 1902,

1. COURT rule: service of argument: waiver of right to open.
and his argument October 6th, following, though served on the 4th.  The cause was assigned for hearing October 9, 1902.  The appellants claim that appellee was in default in not having served his argument ten days prior to the hearing, and asked for submission on the record as of that date.  But, as the burden was on appellee, he had the right to open. He could waive this right "by serving notice in writing of his intention to do so upon appellant or his attorney at least thirty days before the day assigned for the hearing of the cause.  Appellant will then be entitled to open the argument, and must serve copies of his argument upon

an attorney for each appellee ten days before the hearing. Appellee may then and at least three days before the submission, serve upon an attorney for each appellant copies of his argument, which must be confined strictly to matters in reply to appellant's argument." Rule of court 39 (Code, section 4139). Suppose no such notice of intention not to argue has been served, what shall be done with the case? Can the appellee, by failing to serve it, continually postpone hearing, and thereby prevent a decision? We think not. By serving notice, the appellee may compel the appellant to file his argument, or have the cause dismissed for want of prosecution. But this will not prevent the appellant from treating appellee's failure to file argument thirty days before the hearing as a waiver of the right to open and file his argument ten days before such date. And, if he does so, appellee may respond by serving a reply three days before the hearing, and have the cause submitted at that term.

II. At the outset the defendants challenge the plaintiff's right to maintain this action on the ground that a tax deed regularly issued cannot be assailed by one having no title. No doubt the execution of the mortgage to plaintiff transferred no estate in or title to the land. It merely created a specific lien or charge thereon in favor of the plaintiff. *Robertson v. Moline Milburn & Stoddard Co.*, 88 Iowa, 463; *Newman v. De Lorimer*, 19 Iowa, 244; *White v. Rittenmyer*, 30 Iowa, 268; *Gower v. Winchester*, 33 Iowa, 303. But it was sufficient to entitle the mortgagee, or any one having an interest or lien on the property, to redeem from the tax sale before the treasurer's deed had issued. *Adams v. Beale*, 19 Iowa, 61; *Byington v. Bookwalter*, 7 Iowa, 512; *Piffner v. Krapfel*, 28 Iowa, 27; *Rice v. Nelson*, 27 Iowa, 148; *Byington v. Rider*, 9 Iowa, 566; *Byington v. Walsh*, 11 Iowa, 27; *Foster v. Bowman*, 55 Iowa, 237; *Burton v. Hintrager*, 18 Iowa, 348; *Cummings v. Wilson*,

2. TAX sale: who may redeem: manner of.

59 Iowa, 14; *Lloyd v. Bunce*, 41 Iowa, 660; *Witt v. Mew-hirter*, 57 Iowa, 545. Such right of redemption, though enforceable in court, may be exercised without suit; but after the execution of a tax deed redemption is to be effected through an action in court. This appears from section 1440 of the Code: "Any person entitled to redeem lands sold for taxes after the delivery of the deed shall do so by an equitable action in a court of record, in which all persons claiming an interest in the land derived from the tax sale, as shown by the record, shall be made defendants, and the court shall determine the rights, claims and interest of the several parties, including liens for taxes and claims for improvements made on the land by the person claiming under the tax title. No person shall be allowed to redeem land sold for taxes in any other manner after the service of notice provided for by the next section and the execution and delivery of the treasurer's deed." Manifestly, "any person entitled to redeem" is any one having such an interest in or lien on the property as that, but for the deed, he might have paid the county auditor the necessary amount, and procured a certificate of redemption.

That the right to redeem, either with or without suit, continues until such right is in some way cut off, seems axiomatic. The statute provides but one method of accomplishing this, and that is by serving notices on the persons in the manner and making proof thereof as prescribed in the succeeding section. It is the completed service of this notice according to the plain language of the statute, and not the issuance of the deed by the treasurer, which terminates the period of redemption ninety days thereafter. That the last sentence of section 1440 prohibits redemption, save by suit, where proper notices have been given, is not inconsistent with the construction of the preceding portion as including actions to redeem where the period of redemption

3. RIGHT of redemption: when terminated.

has not been terminated by the completed service. Indeed, from subsequent provisions of the Code the latter appears to be the controlling purpose of the section. Section 1441 provides for the termination of the period of redemption ninety days after the completed service of notice as therein specified, and the next section for the issuance of a deed by the county treasurer at the end of such period in the form set out in *extenso* in the section following. Under section 1444 the deed, when recorded, vests in the purchaser "all the right, title, interest, and estate of the former owner in and to the land conveyed, and all the right, title, interest, and claim of the state and county thereto, and shall be presumptive evidence in all the courts of this state in all the controversies and actions in relation to the rights of the purchaser, his heirs or assignees, to the land thereby conveyed, of the following facts:    (1) That the real property conveyed was subject for taxation for the year or years stated in the deed; (2) that the taxes were not paid at any time before the sale; (3) that the real property conveyed had not been redeemed ·from the sale at the date of the deed;    (4) that the property had been listed and assessed; (5) that the taxes were levied according to law; (6) that the property was duly advertised for sale; (7) that the property was sold for taxes as stated in the deed." It is conclusive evidence of certain facts, not necessary to be mentioned at this time.

Then comes section 1445, which appellant contends prohibits plaintiff as mortgagee from maintaining this action: "In all actions involving the title to real estate claimed and held under a deed executed substantially as aforesaid by the treasurer, the person claiming title adverse to the title conveyed thereby shall be required to prove, in order to defeat the title, either that the real property was not subject to taxation for the year or years named in the deed, that the taxes had been paid before the sale, that the property had been redeemed from the

sale and that such redemption was had or made for the
use and benefit of persons having the right of redemption,
or that there had been an entire omission to list or assess
the property, or to levy the taxes, or to give notice of the
sale, or to sell the property, but no person shall be per-
mitted to question the title acquired by a treasurer's deed
without first showing that he, or the person under whom
he claims title, had title to the property at the time of
the sale, or that the title was obtained from the United
States or this state after the sale, and that all taxes due
on the property have been paid by such person, or the
person under whom he claims title.''

Some features of this section deserve special attention.
The first is that, in order to defeat the tax title, some one
of the facts of which the deed is presumptive evidence

**4. SAME; re-
demption
where notice
is not given:
sections 1440
and 1445 dis-
tinguished.** under the preceding section must be nega-
tived. The termination of the right to redeem
is not one of these, and is mentioned in neither
section. None of these relate in any way to
the procedure incident to the issuance of the deed. The
section in terms applies only to the title "held under a
deed executed substantially as aforesaid by the treasurer.''
A deed is not executed by that officer as aforesaid if he
proceeds in the absence of completed service on file in his
office. Can it be that the law makers intended to deprive
the owner of the right to redeem when such right has not
been cut off in the manner provided by law, and he has
been deprived of the naked legal title by the inadvertent
execution of the tax deed by the county treasurer? Such
would be the unavoidable result, as remarked in *Swan v.
Harvey*, 117 Iowa, 58, if the last section is to be construed
as applicable in all cases where treasurer's deed has issued,
for he might be unable to negative a single matter made
by this statute essential to his recovery. The section as-
sumes as a prerequisite the formal acquirement of a deed
under the procedure prescribed by law; that is, the service

and proof of statutory notice, by which the right of re-
demption is terminated.    Until that right is cut off, any
person entitled to redeem before the deed issued may
maintain an action to do so thereafter under section 1440:
*Lynn v. Morse*, 76 Iowa, 665; *White v. Smith*, 68 Iowa,
313; *Paxton v. Ross*, 89 Iowa, 661; *Adams v. Burdick*, 68
Iowa, 666; *Bowers v. Halleck*, 71 Iowa, 218; *Hintrager v.
McElhinny*, 112 Iowa, 325; *Swan v. Harvey*, 117 Iowa, 58.

No doubt those speaking for the court have not always
kept clearly in mind the distinction between actions under
the two sections quoted.    Thus *Lynn v. Morse, supra,* was
an action to redeem under section 893, Code 1873 (section
1440, Code), but the court refers to section 897 (section
1445, Code) in holding that plaintiff had such an interest
in the land as that he might maintain the action.   *White v.
Smith, supra,* was an action to redeem, and the court, in hold-
ing that plaintiff, as executor, might maintain the action,
merely cites decisions defining the interest necessary to
entitle one to redeem from the tax sale before deed has
issued.    In *Adams v. Burdick, supra,* and *Bowers v. Hal-
lock, supra,* it seems to have been assumed that title must
be shown before the action to redeem can be maintained.
It is to be noted, however, that in these cases the parties
based the right to make redemption upon the ownership of
the full title, and not a lesser interest or lien.    They had
title or nothing, and hence the right of one having any-
thing short of title to maintain the action was not involved.
*Paxton v. Ross*, though apparently an attack on the title,
was treated in all respects as an action to redeem, and in
it the distinction between these sections is pointed out,
and the right to maintain an action under section 1440 by
any one having any right to or interest in the property
expressly recognized.    That, where the tax deed has issued
in pursuance of the procedure prescribed, any one attack-
ing the title thereunder must, under section 1445, first show
title in himself, appears from a long line of decisions.

*Petersborough Sav. Bank v. Des Moines Sav. Bank*, 110 Iowa, 519; *Varnum v. Shuler*, 69 Iowa, 92; *Manufacturing Co. v. Beed*, 69 Iowa 546; *Hintrager v. Kiene*, 62 Iowa, 605; *Chandler v. Keeler*, 46 Iowa, 596; *Foster v. Ellsworth*, 71 Iowa, 262; *Baird v. Law*, 93 Iowa, 742; *Nicodemus v. Young*, 90 Iowa, 423; *Shelley v. Smith*, 97 Iowa, 259; *Gill v. Candler*, 114 Iowa, 332. In *State v. Havrah*, 101 Iowa, 486, the rule was applied to an action begun by the state, the court saying; "The object of this statute is to prevent a stranger from questioning the tax title, and to make it secure against all except the true owner. The reason of the statute is the same when applied to a suit brought by the state; and it was incumbent on the state, before it could question the title of the defendants, to establish its own." In *Johns v. Griffin*, 76 Iowa, 419, the holder of a tax certificate was denied the right to question the tax title, the court saying: "It will not do to show, as a compliance with the provision of the statute, a lien or contingent right to the acquisition of title. The law requires that the title to the land be shown."

In *Griffith v. Utley*, 76 Iowa, 292, the tax deed was held to be void for uncertainty, and defendants merely to have the right to redeem from the sale, as plaintiffs had no right other than to receive the amount necessary to redeem. As already indicated, and as appears from these authorities, section 1445 of the Code has reference to title acquired on completed sales; and actions merely to redeem, where the period allowed for that purpose has not expired or been terminated in the statutory way, are not within its terms. In such cases the tax deeds are issued without authority, and, though not absolutely void, they do not have the effect "to terminate the right of redemption, and title conveyed by them is subject to be defeated by the exercise of that right; and, as long as the right to redeem the land exists there is no completed sale."

Slyfield v. Barnum, 71 Iowa 245; Swan v. Harvey, supra, and cases cited therein. This conclusion harmonizes the previous decisions of this court, gives effect to each of the sections mentioned, and a fair construction, and, while shielding the tax deed, issued on proper notice, from assaults by strangers to the title, guards the rights of others entitled to protection by permitting them to discharge the tax burdens at any time before the right to do so has been terminated by the only method provided for that purpose.

III. No question is made but that Perrigo acquired the tax deed as a result of strict compliance with the statutes. He conveyed to the defendant Brown, and the latter agreed, upon reimbursement of the amount by him expended, to deed the property to Daisy Hall. Were this all, plaintiff, as mortgagee, would not be entitled to maintain the action. But he alleges that the tax deed was fraudulently obtained through a transaction which amounted to the payment of the taxes by those under obligation to discharge the tax lien, and, if this has been established, any title acquired under the tax sale inured to his benefit, and defendants are estopped from asserting any title thereunder in themselves as against him. *Porter v. Lafferty*, 33 Iowa, 254; *Stears v. Hollenbeck*, 38 Iowa, 550; *Fair v. Brown*, 40 Iowa, 210; *Garrettson v. Scofield*, 44 Iowa, 35; *Beacham v. Gurney*, 91 Iowa, 621; *Cone v. Wood*, 108 Iowa, 260. If estopped from asserting title in themselves as against the mortgagee, defendants, of course, would not be in a situation to insist on proof of title in plaintiff under the statute.

A careful reading of the record has failed to convince us, however, that Daisy Hall was acting in any save her own interest. She was *sui juris*, and had a perfect right, if she did so, to procure title to the homestead by purchasing the tax title. That she bought it for herself is affirmatively proven. True, she had lived with her parents on

5. SAME: fraud in procuring deed: evidence.

the premises up to the time of her departure for Chicago about the 1st of November, 1897. Notices of the expiration of redemption had been served on them the 15th and 16th days of September previous. She knew of this, and of the existence of the mortgage to plaintiff. Indeed, she had written to him September 12, 1897, in the absence of her father, and in response to a letter to him, suggesting that plaintiff take no action till the return of her father, who, her mother thought, could settle with him, and that court in which suit could be begun on ten days' notice would not convene until December. This cannot be said to have been done in order to lull him into security, for she is not shown to have then known that the taxes were unpaid, or that Perrigo was about to serve notices or take a tax deed. Besides, a delay of but a few days was requested, and not beyond the period of redemption. There is not a particle of evidence, either direct or circumstantial, that she was acting in connection with or for her mother, Ella Hall, owner of the fee, or for John Hall, her father, or that she ever communicated with them concerning the redemption of the lot, or the acquirement of title to it in her own name. Her testimony that she acted solely for herself is undisputed. When she wrote to Perrigo about the middle of December, it was to the effect that she would like to buy the certificate of sale. His answer was that he would take a tax deed and convey to her upon payment of amount due, together with a certain judgment against John Hall and premium paid for insurance. Why include these last two items, if redemption only were intended? Her negotiations with Brown were prior to this, but on the basis that she could get a deed to the premises by paying amount for which sold at tax sale, with interest, and upon this representation he had promised to furnish the money, take a deed from Perrigo, and convey to her upon being reimbursed within two

years. These arrangements were carried out, save the transfer from Brown, and the record discloses no reason for depriving her of the advantages to be derived therefrom. True, Brown acted entirely from disinterested motives, and to save the home for the family; yet negotiations had with him were, as said, with the avowed purpose of acquiring title for herself. He knew nothing of plaintiff's mortgage, and it seems that she was not then advised of the effect the deed would have upon it. The evidence tended to show that John Hall, subsequent to the execution of the tax deed, assured plaintiff's attorney that the sale would not affect Busch; that he would be protected; and, at another time, that he had arrangments with Perrigo by which redemption was to be made, and that Busch need not be uneasy. If Hall made these statements, they were untrue, for Perrigo had declined to make any agreement with him, and insisted that he would take a deed as soon as entitled to it. If he had reference to the arrangements of his daughter, it does not appear that he was authorized to speak for her. The only circumstances tending in any way to sustain the allegations of the petition are these; the relationship of Daisy Hall, and the fact that her parents continued to live on the premises. These, without reference to her testimony that she has improved and repaired the property at her own expense, and was charging rent, are insufficient to establish collusion with her parents to really effect redemption by procuring a tax deed in their behalf, and thereby defeat plaintiff's mortgage. As said, she had the right to buy the lot for herself. She did so, and should be protected in its ownership. See *Insurance Co. v. Wright*, 54 Iowa, 606.—Reversed.