D. W. Bates, Superintendent of Banking, Appellant, v.
A. C. Pabst et al., Appellees.

No. 43853.

May 11, 1937.

Rehearing Denied September 24, 1937.

Mabry & Mabry, for appellant.

Lundy & Pabst, for appellees.

Mitchell, J.—The Peoples Savings Bank of Albia, Iowa, was a banking institution organized under the laws of this state, and since March 22, 1935, has been in the hands of D. W. Bates, Superintendent of Banking of the State of Iowa, as official liquidator.

Among the assets of said bank that came into the hands of Bates was a promissory note of John W. Montgomery and his

wife, Margaret Montgomery, in the amount of approximately $3,500, secured by a mortgage on certain real estate. Also a note signed by J. W. Terrell and wife, Nora Terrell, in the amount of approximately $6,000, secured by a mortgage on certain real estate. Also a note of Robert Nedderman and Carrie Nedderman in the amount of approximately $4,600, which was also secured by a mortgage on real estate. There is no dispute in this record that these parties owed the bank approximately $14,000, and that this indebtedness was secured by mortgages which were a first lien against the real estate described in the mortgages. A. C. Pabst was a member of the board of directors of the Peoples Savings Bank from 1926 to 1934, and a member of the examining committee of that bank during 1932 and 1933. It appears that his main business was that of buying tax certificates; that, while a director of the bank, he purchased the tax certificates on the Montgomery, Terrell and Nedderman farms. It was during those dark days of 1929, 1930, 1931 and 1932, when people were unable to pay taxes. After the period provided by statute had expired, Pabst served notice, as by law provided—altho in this case the correctness of the notice is attacked—and received from the treasurer tax deeds covering these three pieces of land. No notice was served upon the bank or any of its officials, in writing, altho there is a claim the president and acting manager of the bank knew that Pabst had purchased these tax certificates. Bates, as receiver, commenced this action in three separate counts to set aside the tax deeds to the three pieces of property. The lower court refused to set aside the deeds and the receiver has appealed.

I. The first proposition that confronts us is whether the appellant is entitled to question the validity of the circumstances surrounding the issuance of the tax deeds, in this cause, because he held no title to the premises and because his petition is bottomed solely upon alleged fraud and does not come within the provisions of section 7278 of the Code of 1935. If the appellant has a right to maintain this action, it can only be done under the provisions of section 7278 of the Code, which is as follows:

"7278. Redemption after delivery of deed. Any person entitled to redeem lands sold for taxes after the delivery of the deed shall do so by an equitable action in a court of record, in which all persons claiming an interest in the land derived from

the tax sale, as shown by the record, shall be made defendants, and the court shall determine the rights, claims, and interest of the several parties, including liens for taxes and claims for improvements made on the land by the person claiming under the tax title. No person shall be allowed to redeem land sold for taxes in any other manner after the service of the notice provided for by section 7279 and the execution and delivery of the treasurer's deed.''

The question therefore is whether this action was brought under the provisions of section 7278. The appellee strenuously contends it was not. · If it was necessary to stand upon the petition filed, there might be serious doubt in our minds, but the appellant filed an amendment to each count of his petition as follows:

''He states that there was never filed in the office of the treasurer of Monroe County, Iowa, any proper notice of expiration or proper proof of service of any notice of expiration of the period of redemption, such as is required by Section 7282 of the Code and no such proof of service as authorized the treasurer of Monroe County, Iowa, to issue to the defendant any tax deed for the said real estate * * * and that any tax deed issued by the treasurer to the said defendant in pursuance of any purported proof or return of service was null and void because of failure to comply with the statute with regard to such notice and proof of service thereof, in that the said notice and proof of service shows upon its face that the service thereof was not made by A. C. Pabst, the holder of said certificate, and the affidavit or proof of service fails to show that the person making such service did so as the agent or attorney of the owner of said certificate as required by said statute.''

The prayer of the petition is quite broad and includes the following:

''That the court make such other and further orders and decrees, mandatory or otherwise, necessary to protect and enforce the equities in favor of the plaintiff by reason of all the foregoing matters, and for such other and further equitable relief as shall be just in the premises, and a judgment for costs of suit against the defendant, A. C. Pabst.''

To this amendment the appellees filed a reply, in which they set forth that they had filed "a good and sufficient affidavit and proof of service as is required by sections 7282 and 7279 of the 1935 Code of Iowa." Not only that, but the lower court in its findings set out the following:

"One of the particular claims upon which the plaintiff lays stress is that the affidavit as to the expiration of the period of redemption and the notice pertaining to the redemption period was not in keeping with the statutory requirements."

II. The next question is whether or not a holder of a real estate mortgage has such an interest that entitled him to redeem from tax sale.

It is the contention of the appellees that the receiver must first prove title in himself before questioning the validity of tax deeds which have been issued and are regular on their face.

In the case of Busch v. Hall, 119 Iowa 279, at page 282, 93 N. W. 356, 357, this court said:

"At the outset the defendants challenge the plaintiff's right to maintain this action on the ground that a tax deed regularly issued cannot be assailed by one having no title. No doubt the execution of the mortgage to plaintiff transferred no estate in or title to the land. It merely created a specific lien or charge thereon in favor of the plaintiff. Robertson v. Moline Milburn & Stoddard Co., 88 Iowa 463, 55 N. W. 495; Newman v. De Lorimer, 19 Iowa 244; White v. Rittenmyer, 30 Iowa 268; Gower v. Winchester, 33 Iowa 303. But it was sufficient to entitle the mortgagee, or any one having an interest or lien on the property, to redeem from the tax sale before the treasurer's deed had issued. Adams v. Beale, 19 Iowa 61; Byington v. Bookwalter, 7 Iowa 512, 74 Am. Dec. 279; Pfiffner v. Krapfel, 28 Iowa 27; Rice v. Nelson, 27 Iowa 148; Byington v. Rider, 9 Iowa 566; Byington v. Walsh, 11 Iowa 27; Foster v. Bowman, 55 Iowa 237, 7 N. W. 513; Burton v. Hintrager, 18 Iowa 348; Cummings v. Wilson, 59 Iowa 14, 12 N. W. 747; Lloyd v. Bunce, 41 Iowa 660; Witt v. Mewhirter, 57 Iowa 545, 10 N. W. 890. Such right of redemption, though enforceable in court, may be exercised without suit; but after the execution of a tax deed redemption is to be effected through an action in court. This appears from section 1440 of the Code:

" 'Any person entitled to redeem lands sold for taxes after the delivery of the deed shall do so by an equitable action in a court of record, in which all persons claiming an interest in the land derived from the tax sale, as shown by the record, shall be made defendants, and the court shall determine the rights, claims and interest of the several parties, including liens for taxes and claims for improvements made on the land by the person claiming under the tax title. No person shall be allowed to redeem land sold for taxes in any other manner after the service of notice provided for by the next section and the execution and delivery of the treasurer's deed.'

"Manifestly, 'any person entitled to redeem' is any one having such an interest in or lien on the property as that, but for the deed, he might have paid the county auditor the necessary amount, and procured a certificate of redemption."

This seems to cover the case at bar, but the appellees say (altho they do not cite any cases to prove the statement) that this court has reversed itself on this proposition. We cannot agree with appellees in this regard and turn to the later cases.

In Hushaw v. Wood, 178 Iowa 752, at page 754, 160 N. W. 274, 275, this court said:

"Etta Hushaw, as said, owned a life estate, and undoubtedly a life tenant has such an interest in land as that she may redeem from tax sale. See Swan v. Harvey, 117 Iowa 58, 90 N. W. 489, and Busch v. Hall, 119 Iowa 279, 93 N. W. 356, and cases cited therein. These decisions also dispose of that portion of the arguments based on sections 1444 and 1445 of the Code."

In the case of Wood v. Yearous, reported in 159 Iowa 211, at page 214, 140 N. W. 362, 363, we find:

"That the plaintiff or intervener, as holder of a valid outstanding mortgage on the land, may still redeem, if the deed was prematurely issued, is not open to doubt. Swan v. Harvey, 117 Iowa 58, 90 N. W. 489; Busch v. Hall, 119 Iowa 279, 93 N. W. 356; Griffith v. Utley, 76 Iowa 292, 41 N. W. 21."

Thus we find that the owner of a mortgage has such an interest in real estate that would entitle him to bring this action under section 7278.

■■■ III. Having arrived at the conclusion that the peti-

tion and amendments properly bring this action within the provisions of the statutes, and that the owner of a mortgage upon land has such an interest that permits him to bring action, we come now to the all-important question of whether or not there is a sufficient showing of equitable circumstances that would justify this court as a court of equity in setting aside tax deeds and giving appellant the right to redeem.

It is a peculiar situation that confronts us. A. C. Pabst was for approximately twenty years a director of the Peoples Savings Bank of Albia. During a part of that time he was a member of the examining committee, whose duty it was to check over the paper and the assets of the bank. During that same period of time that Pabst was a director he was engaged in the business of buying tax certificates. According to the record presented to us, he was the main purchaser at tax sales held at Albia. He denies he knew that the Montgomery, Terrell and Nedderman notes, secured by mortgages, were held in the bank, and yet he was a director; he was a member of the examining committee. Had he fulfilled the duties of a director and a member of the examining committee, he could not have helped but know that the bank held these respective notes and as security the mortgages upon these various parcels of real estate. We must not forget the situation that existed during those days of 1929, 1930, 1931, and 1932; it was impossible for owners of real estate to pay taxes and banks were desperately hard pressed to carry on without advancing money to pay taxes upon land they held as security for obligations owing the banks. Why, in the very county in which this bank is located, because of the financial condition, there were no tax sales held for two years. Pabst accepted the position of director of the bank. Unfortunately, in Iowa, directors of banking institutions during some of these past years seemed to think that this was an honorary position rather than one of responsibility. Directors are in charge of a bank; they select the officers, and, when the time comes, as it must, that directors of banking institutions understand the responsibility that is placed upon them, the difficulties that banks have found themselves in because of the failure of the cashier and other managing officers to do their duties, will be lessened because directors will be carefully watching the affairs of the bank rather than glorying in the honor of being a director.

In 1 Perry on Trusts (6th Ed.) sec. 129, we find:

"If a person standing in a fiduciary relation makes use of his position to purchase an interest in the trust property with his own funds, as a reversion, a junior or senior mortgage, or other interest from a third person; or if he purchase other property so immediately connected with the trust estate, that it must be used with the trust estate, and the independent ownership of which would seriously affect the use and value of the trust property, he cannot retain the same for his own benefit, but he must hold it upon a resulting trust for his beneficiary. The prohibition of the purchase of trust property by the trustee does not depend on any question of fraud, but is made absolute to avoid the possibility of fraud. The temptation of self-interest is too powerful and insinuating to be trusted. A trustee must not put himself in a position where his private profit will oppose the interests of the estate. If a trustee buys an outstanding claim against the trust property, the transaction will be treated as a payment only, and he will be allowed only what he gave. Railway directors cannot deal with the property for their individual benefit, and a sale of it to any one of the board would be voidable in equity at the instance of any one interested in the road. A trustee may not buy for himself an outstanding title to the estate. One in a fiduciary position must not so conduct himself as to bring his private interests in conflict with the duties of his office. If an administrator buys land sold to pay a debt due his intestate, the heirs and distributees can elect to take the land and allow him his bid. A purchaser from a trustee who has acquired the trust property stands in no better position than the trustee, if said purchaser has notice of the facts. A mere agent, who purchases a reversion in the lands of his principal at a public sale from third persons with his own money, will not be held as a trustee, unless he purchase under some agreement to that effect; and the same rule applies to a tenant in common."

And again, in 1 Perry on Trusts (6th Ed.) sec. 207, it is said:

"The directors of corporations are trustees and agents of the shareholders and of the corporation, and the same rules are applied to the contracts of directors with the corporation as are applied to the dealings of other parties holding a fiduciary relation to each other. The directors are intrusted with the management of the property of the corporation for the best interests

of all the members, and the directors are bound to execute their trust; nor must they allow their private interests to interfere with the duties of the trust that they have assumed, nor assume a position tending to produce a conflict between their private interests and the discharge of their fiduciary duties.''

It is true, appellee purchased these tax certificates and then assigned them to his wife. We cannot see where that would help him in this situation. He knew, or should have known, that the banking institution of which he was a director, of which he was a member of the examining board, had loaned upon the three pieces of property approximately $14,000; that if the tax deeds were taken for the few hundred dollars of taxes that were due on these three pieces of property the bank would lose the $14,000.

We find here a situation in which a director of a bank would be securing an undue advantage if he were permitted to keep this real estate and to deprive, not the bank, but the innocent depositors therein, of the amount of money these three pieces of real estate are worth.

We quote from appellees' brief:

''The eagerness of the courts to protect those who own land from losing the same through tax sale, has brought about the very evident confusion on these matters. Beyond question this zeal to protect the rights of people from losing their property through tax sale is not only reasonable, but right, and should be followed wherever possible.''

We applaud that statement, and, certainly, if there ever was a case where the court should go the limit to set aside a tax sale, it is in the case where a director of a bank, now insolvent, takes title to three pieces of property upon which the banking institution of which he was a director, had loaned $14,000. Appellee continually refers to the fact that it will be the ''bank'' that will take the loss. We cannot help but remember that it is not the ''bank'' that is going to suffer; it is the innocent people who deposited their money in this institution, of which the appellee was a director.

Appellee contends that appellant is estopped by the actions of his predecessor, the Peoples Savings Bank of Albia, from now questioning the validity of the notice of the period of redemption and affidavit of service. It is appellee's claim that the managing

542

officer, sometimes referred to as the president and at other times as the cashier, knew about the fact that these taxes were delinquent and that the bank stood by, knowing these facts, and made no redemption from the tax sale. He claims he talked with a Mr. Canning, who was the president and at times the cashier of the Albia bank. Canning admits he knew the taxes had not been paid upon this land, but he does not admit he knew that Pabst was going to take the tax deed. As he puts it, he thought ''Pabst would carry on with the bank.'' In his position as a director of the bank it is doubtful if appellee could show any estoppel. Certainly not until he made a clear showing that the bank knew that tax deeds were going to be issued. As a director of the bank he was charged with the responsibility of protecting that institution, by seeing that the depositors, who, in the end, are the ones who are going to suffer, were not deprived of their money thru the failure of some official acting under the board of directors to do his duty. Appellee will not suffer. He will receive the amount of money he invested in these tax certificates. He will receive the penalty the law provides. He will receive interest at the high rate specified in the statute. In other words, the investment will be a good one for him. A court of equity will not sit by and permit a bank, under the situation and facts set out in the record in the case at bar, to lose $14,000 worth of securities, when that loss, if these deeds were permitted to stand, would accrue to the benefit of a director of the bank. The equities are entirely with the appellant, and the circumstances set forth in this record justify this court in reversing the lower court, and in holding that deeds should be set aside and that the receiver, upon the payment of the amount of tax certificates, plus penalty and interest, be entitled to redeem the farms involved in this case.

It therefore follows that this case must be, and it is hereby reversed, with instructions to enter decree accordingly.—Reversed.

Chief Justice and all Justices concur.