[Sac. No. 5273.   In Bank.—December 26, 1940.]

PACIFIC COAST JOINT STOCK LAND BANK OF SAN FRANCISCO, Appellant, v. DAVID L. ROBERTS et al., Respondents.

Everett C. McKeage and Richard M. Leonard for Appellant.

A. L. Cowell, Hawkins & Hawkins, Harry W. Horton, Thos. C. Boone, C. F. Metteer and Arvin B. Shaw, Jr., as *Amici Curiae,* on Behalf of Appellant.

Pugh & Pugh for Respondents.

SHENK, J.—This is an appeal by the Pacific Coast Joint Stock Land Bank of San Francisco from a judgment entered in an action brought by it to quiet title to four parcels of land in Tehama County. The defendants were four individuals who were in possession of the land under contracts of sale. The controversy turned upon the effectiveness of an attempt by the plaintiff to redeem the property after sale to the El Camino Irrigation District for delinquent assessments.

In 1927, California Tehama Land Corporation owned a tract of 832 acres within the boundaries of said irrigation district, subject to a recorded mortgage in favor of the plaintiff. During that year and in 1930 the land corporation entered into contracts to sell small parcels of the tract to the defendants, who took possession of the land. The contracts were not recorded. Subsequently and prior to April 1, 1933, the entire tract, including the parcels under contract with the defendants, was sold to the district for delinquent bond and maintenance assessments pursuant to sections 42 and 43 of the California Irrigation District Act (Stats. 1897, p. 254, as amended.) Certificates of sale were duly recorded.

In November, 1933, Pacific Coast Joint Stock Land Bank, plaintiff herein, commenced an action against California Tehama Land Corporation to foreclose the mortgage hereinabove referred to. The defendants herein were not parties to that action. While the foreclosure suit was pending, the plaintiff mortgagee commenced making payments to the district to redeem the land covered by the mortgage. Redemp-

tion payments were made at various times—in February, 1934, under former section 52a of the California Irrigation District Act (added by Stats. 1933, p. 532, repealed by Stats. 1935, p. 1767); under Statutes of 1933, p. 2191, referred to as the Four Year Act; and during and after 1935 under Extra Sessions 1934, Stats. 1935, p. 25, as amended by Stats. 1935, p. 487 [Deering's Gen. Laws, 1937, Act 3886e], referred to as the Ten Year Act. The plaintiff as mortgagee recovered judgment in the foreclosure action in May, 1934, the property was sold to it under foreclosure sale in September, 1935, and a deed executed to it in September, 1936. The defendants herein remained in possession of the parcels under their contracts of sale, and the present action was brought in March, 1937, to quiet title in the plaintiff as against them. The trial court found that the plaintiff had failed to prove title in itself because it had not shown redemption of the four parcels involved.

█ The defendants contend that the judgment of the court is sustainable on the ground that the plaintiff, being a mortgagee, could not avail itself of the redemption statutes pursuant to which it purported to redeem the land.

It appears without question that the plaintiff did not effect nor attempt to effect redemption pursuant to sections 47 and 47a of the Irrigation District Act.

By section 1 of the Statutes of 1933, page 2191, the Four Year Act, the *owner* of land which had been sold to an irrigation district prior to April 1, 1933, as to which the district still held the certificate of sale, was permitted to redeem in four equal annual installments with interest at 7 per cent, and (by section 2) if not so redeemed the land must be redeemed as otherwise provided by law. Section 4 declared the existence of an emergency requiring the exercise of the police power of the state in order to conserve the public welfare. The statement of facts constituting the emergency was included and read in part as follows: "Due to the agricultural depression which has existed for the past several years, many landowners in irrigation districts in the State have been unable to meet their annual taxes and assessments with the result that their land has been sold to the district. The heavy penalties necessary to be paid . . . makes it impossible for the landowner to redeem his land and thousands of landowners are now threatened with the loss of their land.

If the land is not redeemed . . . it then becomes nonassessable for district purposes, and the burden becomes all the heavier on the other landowners in the district, causing more delinquency and loss. The Legislature hereby declares that the welfare of the State requires that the landowner in these districts be not dispossessed of his land, and that the land be redeemed so as to thenceforth bear its just proportion of taxation.''

By the Ten Year Act the legislature enacted similar provisions permitting the *owner* of land sold for delinquent irrigation district assessments prior to the September 30, 1934, to redeem by payment of assessments due in ten equal annual installments with seven per cent interest.

Section 52a, added to the California Irrigation District Act (Stats. 1933, p. 532), provided that ''notwithstanding any of the other provisions of this act any owner of land within the district who is the holder of any matured bond or interest coupon issued by the district which . . . remains unpaid by reason of insufficiency of money in the . . . fund . . . is authorized to apply the credit represented by such unpaid bond or coupon as a medium of exchange in the payment of assessments levied against the lands of such person . . . ''. The collector was authorized to accept the credit memorandum in lieu of lawful money in payment of the assessment levied on the lands of the holder of such bonds or coupons. This section was, on April 25, 1935, held unconstitutional in *Shouse* v. *Quinley,* 3 Cal. (2d) 357 [45 Pac. (2d) 701].

The purported redemption payment made by the plaintiff in February, 1934, pursuant to the Four Year Act and said section 52a, consisted of matured interest coupons aggregating about $6,000. Subsequent payments were made by it in cash purportedly representing installments under the Ten Year Act. The plaintiff contends that, assuming the invalidity of the payment of February, 1934, under the decision in *Shouse* v. *Quinley, supra,* it had nevertheless at the time of the commencement of this action made sufficient payments in cash under the Ten Year Act to entitle it to prevail as against the defendants. In this connection it is to be noted that payments so made and upon which the plaintiff depends to establish its title were made by it not as owner of the land but as mortgagee under the mortgage foreclosed and

before proceedings culminated in a sale and deed to it. Without passing upon the contention that sufficient cash payments had been made under the Ten Year Plan, the controversy is determined by our conclusion on the question whether the plaintiff was one who could take advantage of the emergency redemption statutes.

The plaintiff relies on cases holding that a mortgagee has a sufficient interest to redeem mortgaged property from a tax sale under statutes permitting the owner to redeem, citing *Dubois* v. *Hepburn,* 35 U. S. 1 [9 L. Ed. 325]; *Windett* v. *Union Mutual Life Ins. Co.,* 144 U. S. 581 [12 Sup. Ct. 751, 36 L. Ed. 551]; *Bates* v. *Pabst,* 223 Iowa 534 [273 N. W. 151]; *State ex rel. Eaton* v. *Hirst,* 53 Wyo. 163 [79 Pac. (2d) 489]; 4 Cooley on Taxation, 4th ed., sec. 1565. But such authorities are not controlling under the statutes here involved. It must be remembered that section 47 of the California Irrigation District Act [Deering's Gen. Laws, 1937, Act 3854], which was not repealed or modified by the emergency acts, provided the ordinary method of redeeming land sold to an irrigation district. It provided: "A redemption of the property sold may be made within three years from the date of sale, or at any time thereafter before a deed has been made and delivered, by payment in lawful money of the United States to the collector, of the amount for which the property was sold" plus specified penalties. Unquestionably the mortgagee was entitled to redeem under that section. Unquestionably it still has the right to redeem, either under that section, or under any applicable emergency acts, except as against any purchasers of parcels who have received deeds from the district (three of the defendants herein held quit claim deeds from the district). Inasmuch as the plaintiff, as to the time when it was mortgagee, had the right to redeem under said section 47 of the California Irrigation District Act, it is not appropriate to read into the emergency statutes any more than their language clearly implies.

It is true that the emergency statutes indicated a twofold purpose, namely, to relieve distressed landowners, and to return delinquent property to the tax rolls. But it is not inconsistent with the second objective to confine the operation of the statute in accordance with the plain language employed by the legislature. ▇ That the word "owner" as used in such statutes was restricted to the owner

of the land is distinctly discernible from the provisions of section 1 of both acts, and from the statement of the facts constituting the emergency contained in the 1933 act. ■ It is the function of the courts to construe and apply the law as it is enacted and not to add thereto nor detract therefrom. Unquestionably the statute here involved was of an emergency character having for its purpose, like *moratoria* statutes, the extension of relief to distressed landowners. The declaration of the legislative policy indicates a definite desire that the "landowner in these districts be not dispossessed of his land." If the Legislature had not intended to restrict the operation of the statutes to redemptions by owners of the land, it could easily have omitted the word "landowner" therefrom and provided for such special redemption in language comparable to that employed in section 47 of the California Irrigation District Act. Under such general statute effect could well be given to a redemption by a mortgagee, for then there would be no express restriction to redemption by owners.

■ The term "owner" is generic and being of general application is therefore frequently applied to one having an interest in or claim upon property less than the absolute and unqualified title. (*Prudential Ins. Co.* v. *Kraschel*, 222 Iowa 128 [266 N. W. 550].) The term frequently depends for its signification upon the connection in which it is used and may concededly include one not holding the legal title. (*RCA Photophone, Inc.*, v. *Huffman*, 5 Cal. App. (2d) 401 [42 Pac. (2d) 1059].) While it has been held that a mortgagee is an "owner" within a tax redemption statute (*Blaine County Bank* v. *Noble*, 55 Okl. 361 [155 Pac. 532, 534]), the converse also has been held. (*Mixon* v. *Stanley*, 100 Ga. 372 [28 S. E. 440, 441].) A mortgagee has been held to be an owner within the meaning of eminent domain or condemnation statutes. (*Houston etc. Ry. Co.* v. *Tyrrell*, 128 Tex. 248 [98 S. W. (2d) 786, 793, 108 A. L. R. 1508]; *National Assn.* v. *Arroyo etc. Dist.*, (Tex. Civ. App.) 110 S. W. (2d) 150.) But a mortgagee has been held not to be an owner within the meaning of a mechanic's lien law and therefore not entitled to notice of suit upon a lien claim. (*Cornell* v. *Conine-Eaton Lumber Co.*, 9 Colo. App. 225 [47 Pac. 912].) Other illustrations could be cited, but sufficient has been said to establish that the precise meaning of the word

"own" or "owner.", when not modified by other words indicating either qualified or absolute ownership, depends upon the subject-matter and the circumstances surrounding the subject-matter and the parties. (*RCA Photophone, Inc.*, v. *Huffman, supra; Prudential Ins. Co.* v. *Kraschel, supra; Bare* v. *Cole,* 220 Iowa 338 [260 N. W. 338].) Thus while in the State of Iowa it has been held that a mortgagee is an "owner" under the ordinary tax redemption statute (*Lane* v. *Wright,* 121 Iowa, 376 [96 N. W. 902, 100 Am. St. Rep. 362]), it has also been held that a junior mortgagee, who had foreclosed and obtained a sheriff's deed and reserved a deficiency judgment prior to foreclosure by a senior mortgagee, was not entitled to an extension of the period of redemption from the sale under the senior mortgage, since such junior mortgagee was not an "owner" within the meaning of emergency legislation relating to the extension of the redemption period from sale under a mortgage on application of the owner of the land. (*Equitable Life Assur. Soc.* v. *Kramer,* 218 Iowa, 80 [253 N. W. 809].) The court declared in the case last cited that "The undoubted objective of the legislation is to extend grace to the owner or debtor as between him and his creditor and to protect as far as possible the *status quo* between the parties and to defer for a brief time the debtor's ejection from the premises." The effect of the foregoing cases is, therefore, that a mortgagee may be an owner within the meaning of redemption statutes generally, but he is not such an owner as may benefit by emergency legislation enacted specifically to defer the dispossession of *landowners* by extending the *owners'* time for redemption. This must likewise be the result in the present controversy. That is, while the plaintiff as mortgagee may be entitled to redeem under the general and unrestricted language of section 47 of the California Irrigation District Act, it may not be recognized as an owner within the meaning of special emergency legislation which purports to extend exclusively to landowners certain privileges and *moratoria* in the matter of redemption of their delinquent lands. An interpretation of the emergency statutes by giving effect to the language actually employed without interpolation is in accordance with the declared legislative objective. The mortgagee, on the other hand, was not deprived of the right open to it to redeem

under the general statute, section 47, of the Irrigation District Act.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., and Curtis, J., concurred.

Mr. Justice Houser did not participate in the foregoing decision.