MODERN HEAT AND POWER COMPANY, Appellant, v. BISHOP STEAMOTOR CORPORATION et al., Appellees.

No. 47316.

(Reported in 34 N. W. 2d 581)

1268

NOVEMBER 16, 1948.

Paul W. Walters and Robert R. Jordan, both of Des Moines, for appellant.

Hall & Ewalt, of Indianola, for appellees.

GARFIELD, J.—The case involves the validity of a tax deed issued to plaintiff's immediate grantor.

In 1932 defendant Bishop Steamotor Corporation, a corporation organized in 1929, became owner of the real estate in controversy, an outlot in the town of Carlisle. On December 2, 1940, the property was sold at scavenger tax sale to Warren county for $488 for nonpayment of taxes for 1937, 1938, and 1939. On March 20, 1942 Kenneth M. Bishop purchased the certificate of tax sale from Warren county for $488. On April 8, 1942, a tax deed was issued to Kenneth. On June 18, 1946, Kenneth

deeded the property to plaintiff, Modern Heat and Power Company, a corporation organized that same month. Kenneth was one of the incorporators, a director and secretary-treasurer of plaintiff. On June 21, 1946, plaintiff commenced this action to quiet its title as against Bishop Steamotor Corporation, Carl Bishop and Milton Bishop, president and secretary thereof respectively.

Two defenses were interposed: (1) At the time he acquired the tax certificate and deed Kenneth Bishop was a director of defendant corporation and could not act in hostility to it. His acts were constructively fraudulent and amounted to a redemption on behalf of the corporation. (2) The tax deed was void because of failure to comply with the mandatory requirements of statute regarding notice of expiration of right to redeem and proof of service thereof. Defendants offered to pay plaintiff the amount paid for the tax deed and for subsequent taxes, with interest, together with such other sums as the court might decree.

The trial court sustained both defenses and further held, what seems to be conceded, plaintiff stands in no better position than Kenneth did under his tax title. The tax deed was ordered canceled and title of defendant corporation quieted upon condition that within thirty days from the decree it reimburse plaintiff for the amounts paid for the property and for subsequent taxes and improvements thereon, a total of $1437. Another issue in the case to which we will refer later arose out of the filing by Kenneth M. Bishop in 1945 of an "affidavit by tax-titleholder" under section 448.15, Code, 1946.

After the decree was entered plaintiff filed a motion for new trial together with amendments thereto and defendants filed resistances to all papers filed by plaintiff. Numerous affidavits were attached to the papers. The motion, amendments, resistances and attached affidavits fill sixty pages of the record. The motion was submitted on the affidavits and counter affidavits to Judge Earl W. Vincent who overruled it. Judge Hays, who heard the original trial, was soon thereafter appointed to this court.

Plaintiff has asked us to consider and accept as true many statements contained in the affidavits filed by it but

which are denied in counter affidavits. This we cannot do. Nor are we justified in interfering with the ruling on the motion for new trial. The motion is based largely on claimed newly discovered evidence pertaining to the disputed question whether Kenneth M. Bishop had resigned as a director of defendant Bishop Steamotor Corporation before the assignment to him of the tax-sale certificate. Much of the trial was devoted to evidence upon this question.

Concededly Kenneth was elected a director of defendant corporation at a stockholders' meeting on December 2, 1939, and acted as such at least until September 1940, when he claims to have resigned. He also caused to be printed stationery for defendant corporation at the head of which his name appeared as vice president, together with the names of other officers. Defendants admit that at a directors' meeting on September 14, 1940, Kenneth said, "I am going to resign" but their witnesses deny he ever tendered either an oral or written resignation.

Upon the trial no record of defendant corporation was produced in support of the claimed resignation. Perhaps the most vital evidence, said to be newly discovered, upon which plaintiff's motion for new trial is based is what purports to be a corporate record of the directors' meetings of September 14 and 21, 1940. The purported record of September 14 contains the statement, "Kenneth Bishop and F. E. Warren turned in their resignations as managers of the corporation." The purported record of September 21 states the minutes of the September 14 meeting were "accepted as read" and also "C. E. Bishop [president of the corporation] stated that he thought the resignation of Kenneth Bishop and Fred Warren should be deferred until the next stockholders' meeting and until other matters were straightened up."

I. Of course the ruling on a motion for new trial rests largely in the sound discretion of the trial court and we will not interfere therewith except in a reasonably clear case of abuse of such discretion. Egy v. Winterset Motor Co., 231 Iowa 680, 688, 2 N. W. 2d 93, 97, and citation. See also 39 Am. Jur., New Trial, section 13. Perhaps somewhat less discretion is to be exercised where the ruling is made by a judge who did

1272

not preside at the trial. Eller v. Paul Revere Life Ins. Co., 230 Iowa 1255, 1261, 300 N. W. 535, 538, and citations.

▇ It is frequently said courts do not favor the granting of a new trial because of newly discovered evidence. Eller case, supra, and citations; 39 Am. Jur., New Trial, section 156, and authorities n19. Reasonable diligence in discovering and producing new evidence is required both by our rules (Rules of Civil Procedure, 244(g), 252(f)) and numerous of our decisions. See also 39 Am. Jur., New Trial, section 160. The showing of diligence here is not persuasive. So far as shown much of the evidence relied upon in the motion for new trial could with reasonable diligence have been produced upon the trial.

The purported record of the directors' meetings of September 14 and 21, 1940 was prepared by a lady whom Kenneth Bishop married in October 1941, and with whom he lived thereafter. The records were in Kenneth's possession at least until April 1946, when he and his wife returned to Iowa from California. The records were then left by Kenneth in a building on the land in controversy and his inability to produce them upon the trial is a matter of sharp dispute in the affidavits which are part of the papers pertaining to the requested new trial.

▇ No excuse was offered for the failure to call Mrs. Kenneth Bishop as a witness upon the trial. Her affidavit attached to an amendment to plaintiff's motion, filed seven months after the trial and six months after the decree was entered, states she attended the directors' meetings of September 14 and 21, 1940, took down the minutes in shorthand, then transcribed them, and saw Kenneth and F. E. Warren deliver written resignations to C. E. Bishop, the president, at the September 14 meeting, and heard Kenneth say he was severing all connection with the company. For all that appears the affiant knew this at the time of trial, was readily available and could have testified then to all such matters.

Upon the question whether Kenneth had resigned as a director, in addition to the affidavit of Kenneth's wife, plaintiff attached to its amended motion affidavits by Kenneth and one Colyn, both of whom testified upon the trial, and five other persons. One of these other affiants, F. E. Warren, lived in

Pennsylvania when he made his affidavit but was previously manager of Rollins Hosiery Mills in Des Moines. It would seem his testimony could have been produced upon the trial. The other four affiants lived in or near Des Moines and for all that appears were available as witnesses at the trial.

■ The evidence claimed to be newly discovered is largely cumulative in character. The affidavits of Kenneth and Colyn go into more detail than did their testimony upon the trial. Most of the evidence referred to in the other affidavits is of the same kind and to the same point as that given upon the trial. It is well settled that a new trial will not ordinarily be granted for newly discovered evidence which is merely cumulative or impeaching in character. Maland v. Tesdall, 232 Iowa 959, 971, 5 N. W. 2d 327, 333, and citations; Egy v. Winterset Motor Co., supra, 231 Iowa 680, 688, 2 N. W. 2d 93, 97.

II. Upon the record at the trial we are not prepared to reverse the trial court's holding that Kenneth was a director of defendant corporation when he acquired the tax-sale certificate.

However, we cannot accept defendants' contention that Kenneth had not effectively resigned as director for the reason his successor had not been chosen and entered upon the discharge of his duties. The articles of incorporation of defendant company provide: "All * * * directors * * * shall hold office for a term of one year, or until their successors shall have been duly elected and have qualified, and shall have entered upon the discharge of their duties."

■ Although there seems to be no decision of ours upon the point and there is some authority to the contrary, the general rule is said to be that a director may resign by turning in his resignation to take effect immediately and such a provision as just quoted from the articles does not continue him in office until his successor is chosen. See 19 C. J. S., Corporations, section 736a; 13 Am. Jur., Corporations, sections 885, 886; Western Pattern & Mfg. Co. v. American Metal Shoe Co., 175 Wis. 493, 185 N. W. 535, 20 A. L. R. 264, and annotation 267. We are not disposed to depart from this rule.

■ Whether a director has resigned is a question of fact to be determined from the circumstances of each case. 19 C. J. S., Corporations, section 736b.

Kenneth and his father, C. E. Bishop, were not on the best of terms in September 1940 nor thereafter. As stated, defendants admit Kenneth said at the directors' meeting of September 14, 1940, "I am going to resign" but their principal witnesses, C. E. Bishop and Milton Bishop, deny Kenneth said or did anything further about resigning. Kenneth testifies he said at the September 14 meeting, "I am resigning" and either at that meeting or the one of September 21 handed his father (president of the company) a paper stating he resigned. Kenneth says he attended the meeting of September 21 because his father asked him to come back to finish up some business. Colyn, another director, was the only other witness at the trial upon this question. He testifies:

"I was present at a meeting in which Kenneth made some statement about resigning. I don't know just how he worded it, but he said he was going to resign, and I also quit shortly after that. I turned in my resignation, and I think Fred Warren did too. I understood by what he said that he was resigning at that time. (Cross-examination): What he said was 'I am going to resign.' * * * I don't know anything about what Kenneth did or didn't do after that meeting."

It is admitted Kenneth attended the meeting of September 21. He there made several motions which were not "to finish up some business." Kenneth retained his stock in the corporation which perhaps was of little value. It is true he went to California in February 1941 and went to work there at naval bases. Previously he had worked at the Rollins Hosiery Mills in Des Moines. He returned to Carlisle for a month in May 1942. C. E. Bishop and Milton Bishop both say a directors' meeting was then held in which Kenneth took part. Kenneth however denies this. What purports to be a brief record of such a meeting is in evidence.

■ From the evidence the trial court apparently found Kenneth had said merely "I am going to resign," not that he did resign. We are warranted in according weight to this finding even though our review is de novo. We feel we are not justified in disturbing the finding nor the conclusion this was insufficient to amount to a resignation.

██ ██ A director of a corporation cannot for his own benefit acquire a tax title to property owned by the company. His act in so doing will be treated as payment of the tax and he will be entitled only to reimbursement for what he paid. Bates v. Pabst, 223 Iowa 534, 540, 273 N. W. 151, and citations; 51 Am. Jur., Taxation, section 1057. See also Koch v. Kiron State Bank, 230 Iowa 206, 297 N. W. 450, 140 A. L. R. 273, and citations; 19 C. J. S., Corporations, section 784. Since plaintiff had notice of the facts it stands in no better position than Kenneth did. Bates v. Pabst, supra; Young v. Goodhue, 106 Iowa 447, 76 N. W. 822.

III. While the above is conclusive as to the invalidity of the tax deed we are disposed to consider also the second defense pleaded by defendants. We do this partly because we have not considered, nor did the trial court in reaching its decision, the claimed newly discovered evidence referred to in Division I hereof on the question of Kenneth's resignation as director.

The affidavit of service of notice of expiration of right of redemption from the tax sale is as follows:

"State of Iowa, Warren County, ss. I, A. H. Traub, being duly sworn, on oath say that I am agent for Warren County Iowa, the holder of the certificate of purchase above described, and that the foregoing notice under the direction of A. H. Traub, agent for Warren Co. Iowa was served upon Carl Bishop, Pres. of the Bishop Steamotor Corp. at Allen Twp. Warren Co., Iowa, by Lewis Johnson, sheriff of Warren Co., Iowa, on the 15th day of Oct. 1941. [Signed] A. H. Traub, Agent for Warren Co., Iowa. [Duly verified.]"

Section 447.12, Code, 1946, provides when service of such a notice is deemed complete. It states:

"Service shall be complete only after an affidavit has been filed with the treasurer, showing the making of the service, the manner thereof, the time when and place where made, and under whose direction the same was made; such affidavit to be made by the holder of the certificate or by his agent or attorney, and in either of the latter cases stating that such affiant is the agent or attorney, as the case may be, of the holder of such certificate * * *."

1276

■ The burden is upon defendants to show the invalidity of the tax title. Fidelity Inv. Co. v. White, 208 Iowa 519, 521, 223 N. W. 884.

■ ■ We have repeatedly held the right of redemption from tax sale will be liberally construed in favor of the taxpayer, the requirements of section 447.12 are mandatory and if the affidavit of service is incomplete and insufficient the right of redemption is not cut off thereby and no valid tax deed can issue. Galleger v. Duhigg, 218 Iowa 521, 525–527, 255 N. W. 867, and citations.

We are not now disposed under the present record to recede from our previous decisions. The property in question is shown to have been worth from $8000 to $11,000 when the tax title was acquired at a total investment, including improvements, of $1437. Nineteen days after the tax deed issued Kenneth wrote his father:

"Dear Dad: I am very anxious to know what you wish to do about the place. I am willing to furnish the money to pay all the taxes on the property in order that the place be put in your name that you may have a place to make a living and do whatever you wish.* * *."

■ We have many times construed section 447.12 to require the affidavit of service to state that service of the notice was made by either the certificate holder or his agent or attorney. Weideman v. Town of Pocahontas, 225 Iowa 141, 279 N. W. 146; Galleger v. Duhigg, supra; Geil v. Babb, 214 Iowa 263, 268, 242 N. W. 34; Fidelity Inv. Co. v. White, supra, 208 Iowa 519, 522, 523, 223 N. W. 884; Funson v. Bradt, 105 Iowa 471, 476, 75 N. W. 337; Stevens v. Murphy, 91 Iowa 356, 59 N. W. 203, 51 Am. St. Rep. 348; Ellsworth v. Van Ort, 67 Iowa 222, 25 N. W. 142. This rule is applied where service of the notice is made by the sheriff. Ellsworth v. Van Ort, Funson v. Bradt, and Geil v. Babb, all supra.

As the trial court held, the above affidavit of service fails to comply with section 447.12 in that it does not show the manner of making service nor that it was made by the agent or attorney of the certificate holder. It is silent on both requirements. Under the decisions cited last above and several others the affi-

davit is insufficient in these respects, the redemption period was not cut off and the tax deed was invalid.

By way of amendment to plaintiff's motion for new trial filed eight months after the entry of decree, plaintiff produced a return of service of notice of expiration signed by the deputy sheriff. Even if this return were to be considered it would not remedy the defects in the affidavit of Traub because it is neither sworn to nor incorporated in the Traub affidavit nor does it state that service was made by the agent or attorney of the certificate holder.

We need not determine whether, as the trial court held, the failure of the Traub affidavit to show service "upon the person in possession of such real estate" (see Code section 447.9) is also a fatal defect therein. Nor is it necessary to consider the trial court's holding that *the notice* was insufficient in failing to state it was given by the certificate holder.

▇▇▇ Code section 448.5 provides:

"The deed shall be conclusive evidence * * *. 3. That all the prerequisites of the law were complied with *by all the offi-cers* who had * * * any part or action in any transaction relating to or affecting the title conveyed or purporting to be conveyed by the deed, from the listing and valuation of the property up to the execution of the deed * * *." (Italics ours.)

▇▇▇ This law is of no avail to plaintiff here. The statute is to be strictly construed in favor of the owner. Bennett v. Greenwalt, 226 Iowa 1113, 1127, 286 N. W. 722, and citations. The quoted part of section 448.5 purports to apply only to acts of the public officers leading up to the execution of the tax deed and not to the things, such as filing the affidavit of service under 447.12, required of the certificate holder. Reed v. Thompson, 56 Iowa 455, 457, 9 N. W. 331; Wilson v. Crafts, 56 Iowa 450, 9 N. W. 333. See also Pease v. Globe Realty Co., 141 Iowa 482, 119 N. W. 975, 42 L. R. A., N. S., 6; Miller v. Miller, 96 Cal. 376, 31 P. 247, 31 Am. St. Rep. 229, and decisions heretofore cited in this division.

Further, as stated, we have frequently held the filing of the affidavit in compliance with 447.12 is mandatory. Therefore the quoted part of 448.5 does not make the tax deed conclusive

1278

evidence of such filing. Hotz v. Page County, 235 Iowa 585, 16 N. W. 2d 240.

IV. In October 1945, Kenneth Bishop filed with the proper county recorder an "affidavit by tax-titleholder" under Code sections 448.15, 448.16, set forth in a footnote to Swanson v. Pontralo, 238 Iowa 693, 696, 27 N. W. 2d 21, 23. No claim adverse to Kenneth's tax title was filed within one hundred twenty days as contemplated by section 448.16. The affidavit recites "that K. M. [Kenneth] Bishop is now in possession of said real estate through his tenant, Carl Bishop."

In Swanson v. Pontralo, supra, we hold sections 448.15, 448.16 are statutes of limitations which authorize the filing of an affidavit *by one in possession* of realty under a recorded tax deed as a result of which adverse claims *of those not in possession* are barred.

 The affidavit filed here entitles plaintiff to no relief because the evidence shows Kenneth was not in possession of the property in question. The Bishop Steamotor Corporation or perhaps Carl Bishop was in possession. The statement in the affidavit that Carl Bishop was a tenant of Kenneth is not supported by the record. It is not claimed there was any tenancy in fact but plaintiff relies upon some sort of tenancy by operation of law following the delivery of the tax deed.

 An invalid tax deed does not carry with it constructive possession. 51 Am. Jur., Taxation, section 1160; note 27 L. R. A., N. S., 339, 344. Where there is no change in the possession of the original owner following the issuance of the tax deed sections 448.15, 448.16 do not apply. This is the effect of our holding in Swanson v. Pontralo, supra. See also 51 Am. Jur., Taxation, section 1160; Buty v. Goldfinch, 74 Wash. 532, 133 P. 1057, Ann. Cas. 1915A, 604, and note 608; note 8 L. R. A., N. S., 157, 161.

It is suggested in argument here that defendants were guilty of negligence and laches. It is sufficient to say no such issues were raised by plaintiff in the trial court.—Affirmed.

SMITH, C. J., and OLIVER, BLISS, HALE, WENNERSTRUM, MANTZ, and MULRONEY, JJ., concur.

HAYS, J., takes no part.