VIVIAN EGY, Appellee, v. WINTERSET MOTOR COMPANY, Appellant.

No. 45815.

FEBRUARY 10, 1942.

Webster & Frederick, for appellant.

Phil R. Wilkinson, for appellee.

MILLER, J.—Plaintiff's petition asserts that on August 20, 1937, the defendant, Winterset Motor Company, and plaintiff's husband and assignor entered into an oral contract whereby her husband agreed to purchase a new Ford sedan equipped with radio and heater for $883, the purchase price to be paid as follows. $571 as the trade-in allowance on her husband's Ford sedan, and the difference of $312 to be paid by delivery of that amount of coal, her husband being in the retail coal business; that her husband's sedan was delivered to defendant as a payment of $571 on the purchase price and he offered to deliver the coal to complete the payment for said new car, but defendant refused to take the coal, refused to deliver the new car and refused to return the car that had been traded in or to pay the value thereof; that her husband was indebted to the Winterset Motor Company and, after deducting such indebtedness, the defendant owes her husband $294.74, claim for which sum has been assigned to her. Judgment was demanded for said sum with interest and costs.

Defendant's answer was a general denial of allegations

not admitted. The terms of the oral contract were admitted, except that defendant asserted that the balance of $312 was to be paid in cash, and defendant asserted that it had been ready, willing and able to perform its part of the contract but Egy refused to pay the balance of $312 in cash according to the terms of the contract. Defendant also disputed the amount of indebtedness owed by Egy, contended that the indebtedness was such that, deducting it from $571, left a balance of $279.44 instead of $294.74. Defendant also asserted a counterclaim of $186.78 for loss of profits by reason of Egy's refusal to perform the contract for the purchase of the Ford sedan and offered to confess judgment for the difference between the aforesaid sum of $279.44 and the amount of the counterclaim of $186.78, or $92.66.

The cause proceeded to trial to the court, a jury being waived. Plaintiff and her husband testified to the terms of the oral contract and that the difference of $312 was to be paid by the delivery of coal and not in cash. Such testimony was corroborated by one Cleo Manning, who testified that he was at Egy's home when the oral agreement was made and overheard the conversation and that the balance of the trade was to be taken out in coal. Defendant's only witness was its manager, who represented it in negotiating the oral contract. He testified that the difference was to be paid in cash at the time of the delivery of the new car. He also testified to the facts upon which the counterclaim was based.

The testimony was closed on the afternoon of May 14, 1940. On the following day the defendant filed a verified motion to reopen the case to introduce additional testimony, asserting that it expected to prove by competent testimony that on August 20, 1937 (the date that the negotiations took place between plaintiff's husband and defendant's manager), the witness Manning was employed in a cement quarry from seven o'clock in the morning until three o'clock in the afternoon; that defendant could not with reasonable diligence have ascertained that this testimony was material because it had no means of knowing that Manning would be called as a witness or what his testimony would be. The motion to reopen the case was overruled.

On August 16, 1940, the judge filed in the office of the clerk a written ruling, finding that the plaintiff was entitled to judgment in the sum of $279.44 and further that judgment entry might be prepared and, after submission to counsel for defendant, be forwarded to the judge for signature. Said ruling was not spread of record but was simply filed with the clerk. Thereafter, on August 28, 1940, a judgment was entered against the defendant in favor of the plaintiff in the sum of $279.44 with interest and costs.

On August 31, 1940, defendant filed a motion for new trial, asserting that the court erred in overruling the motion to reopen the case; that defendant had discovered new evidence regarding the cost of coal to plaintiff's husband, which tended to refute the testimony of her husband as to the amount of coal which he undertook to deliver in payment of the balance of the contract price and also evidence of admissions by plaintiff and the witness Manning which tended to discredit their testimony; that the court's decision is contrary to the evidence and the written receipt which plaintiff received when her husband's car was delivered to the defendant. On February 7, 1941, the motion for new trial was overruled, the court holding it was not filed in time. The court also held that the newly discovered evidence was merely offered for the purpose of impeaching some of the witnesses, had no probative value and was not of such nature as is contemplated by the statute as grounds for the granting of a new trial. On May 26, 1941, defendant appealed.

At the outset we are confronted with appellee's motion to dismiss the appeal which is predicated upon the fact that, the notice of appeal having been served and filed more than four months after the entry of judgment and more than 60 days after the overruling of the motion for new trial, the only question presented by the appeal is the ruling on the motion for new trial. See Pride v. Inter-State B. M. Acc. Assn., 207 Iowa 167, 170, 216 N. W. 62, 62 A. L. R. 31; Lotz v. United Food Markets, 225 Iowa 1397, 1401, 283 N. W. 99. Appellee contends that the motion for new trial was not filed in time, there was nothing to pass upon below and there is no question presented for our determination here.

Appellee relies upon section 11551 of the Code, 1939, which provides, ''The application must be made within five days after the verdict, report, or decision is rendered, unless for good cause the court extends the time, except for the cause of newly discovered evidence,'' and section 11581, which provides, ''The provisions of this chapter relative to juries are intended to be applied to the court when acting as a jury on the trial of a cause, so far as they are applicable and not incompatible with other provisions herein contained.''

It is appellee's contention that the ruling which the court filed on August 16, 1940, corresponds to the verdict of a jury and is the ''verdict, report or decision'' within five days of which the motion for new trial must be filed to comply with section 11551. This was the position taken by the court. Appellant contends that the motion for new trial was not required to be filed until the judgment was entered and, having been filed within five days thereafter, the motion was timely filed and the court erred in holding otherwise.

Appellee relies primarily upon our decision in the case of Selby v. McDonald, 219 Iowa 823, 259 N. W. 485. In that case, the action was at law, tried to a jury. At the conclusion of the evidence, the plaintiff made a motion for a directed verdict in his favor which was sustained. A verdict was returned by direction of the court, was signed by one of its members as foreman, and was entered upon the journal on January 20, 1916. Thereafter, on April 18, 1930 (fourteen years later), a judgment was entered for the amount specified in the verdict with interest from January 20, 1916, and costs. On April 22, 1940, the defendant filed a motion for new trial which was sustained. Thereafter, the plaintiff filed a motion to set aside the order granting a new trial, on the ground that the court was without jurisdiction to grant the same. This motion was sustained and the defendant appealed from such ruling. This court affirmed the case holding, in accord with our decision in Bottineau Land Co. v. Hintze, 150 Iowa 646, 125 N. W. 842, that a directed verdict returned by the jury is a ''verdict of a jury'' within the contemplation of section 11551 of the Code and, accordingly, the motion for new trial could not be filed fourteen years later. We are abidingly satisfied with the cor-

rectness of that decision, but we are unable to see that it is in any way applicable or controlling here.

We are unable to find any decision squarely in point, heretofore decided by this court. However, the decisions relied upon by appellant, to wit: Hess v. Hess, 184 Iowa 796, 169 N. W. 111, and Rance v. Gaddis, 226 Iowa 531, 284 N. W. 468, appear to be more analogous than the decisions relied upon by appellee.

In the case of Hess v. Hess, supra, 184 Iowa 796, 798, 169 N. W. 111, the proceedings were in probate, tried to the court in October, 1916. On November 3, 1916, the court made the following calendar entry: " 'Court finds for the plaintiff, Mary Hess, and that she was the lawful wife of J. O. Hess, and is his widow (see decree), to all of which defendant administrator excepts.' " Judgment was not entered pursuant thereto until November 10, 1916. On the following day a motion for new trial was filed, which was sustained. The defendant appealed, challenging the jurisdiction of the court and contending that the motion for new trial should have been filed within three days after November 3, 1916, and, not being filed until eight days thereafter, the court was without jurisdiction to grant the new trial. We held that the appeal was without merit stating, "The record of this enrolled decree was the final judgment, and the defendant was entitled to file a motion for a new trial within three days thereafter."

In the case of Rance v. Gaddis, supra, 226 Iowa 531, 547, 284 N. W. 468, 477, the action was one in equity. On July 2, 1936, the court entered upon the calendar its finding which concluded: "Judgment will be entered against the defendants, Roy Gaddis and wife, for the whole amount of the costs, but against the Perpetual Savings & Loan Association only for the fees of the witnesses called by it." Thereafter, on July 30, 1936, a formal decree was entered which contained some provisions not contained in the calendar entry on July 2, 1936. In this court it was contended that the decree of July 30, 1936, was a nullity, the court having exhausted its jurisdiction by the entry of July 2, 1936. We found no merit in the contention. In reaching our conclusion, we reaffirmed and relied upon our decision in the case of Hess v. Hess, supra.

In the case of Selby v. McDonald, supra, reference is made to the case of Trainer v. Kossuth County, 199 Iowa 55, 201 N. W. 66. In that case the parties agreed to a sealed verdict. Such a verdict was delivered to the clerk, who entered on the docket the following, "November 29, 1922, verdict filed." Nothing further was done with reference to the verdict until December 18, 1922, when the verdict was opened in open court and judgment was entered thereon. As a part of the judgment entry defendants were granted until January 1, 1923, to file motion for new trial. A motion for new trial was filed December 30, 1922, and being overruled, an appeal was taken. The appellee filed a motion to dismiss the appeal on the ground that the court was without jurisdiction to extend the time to file a motion for new trial because the time within which to file the same commenced to run when the verdict was filed November 29, 1922. We found no merit in such contention. In so holding we state (199 Iowa 59, 201 N. W. 67) as follows:

"A fatal objection to the literal construction of this statute contended for by the appellee, is the absurdity of the result. By agreement of the parties, this verdict was sealed by the jury and placed in the hands of the bailiff. No one save the court had authority to receive this verdict from the bailiff or to open the seal. Such was the existing condition until December 18th. Under the theory of appellee, there was never a moment of time prior to December 18th when either party could have filed or presented a motion for a new trial, because no one knew, or could properly know, what the verdict was. The first adjournment was to December 5th. If the verdict had been opened on that date, it would have been already too late to file a motion for a new trial. Such absurdity of result calls for scrutiny of the statute. Ad absurdum is a 'Stop' sign, in the judicial interpretation of statutes. It is indicative of fallacy somewhere, either in the point of view or in the line of approach. In such case, it becomes the duty of the court to seek a different construction, and to presume always that absurdity was not the legislative intent. To this end, it will limit the application of literal terms of the statute, and, if

necessary, will even engraft an exception thereon." (Citing cases.)

Pursuant to the foregoing authorities, we are of the opinion and hold that the court erred in overruling the motion for new trial on the theory that it was filed too late. We hold that section 11551 of the Code must be interpreted to the effect that the "verdict, report, or decision", that must be rendered to commence the running of the five-day limitation within which a motion for new trial can be filed, does not include an informal ruling such as that which was filed by the court herein on August 16, 1940. Where an action at law is tried to the court, a jury being waived, and the court informally expresses the nature of its decision and directs that counsel for the successful party prepare a formal judgment to give effect to the informal decision so expressed, the five-day period, within which a motion for new trial may be filed, does not commence to run until the formal judgment has been prepared and entered. To hold otherwise would always place it within the power of counsel for the successful party to delay the preparation of the formal entry for more than five days, as was apparently done herein, and thus place the defeated party in the incongruous situation of being compelled to prepare and file a motion for new trial before it could be known with certainty just what the formal decision was going to be. This might conceivably lead to almost as absurd a situation as that presented in Trainer v. Kossuth County, supra. As there stated, we cannot and will not attribute to the legislature the intention to produce such a result. Accordingly, the motion to dismiss the appeal herein is overruled.

Appellant's first assignment of error asserts that the court erred in refusing to entertain the motion for new trial on the theory that it was filed too late. Pursuant to the foregoing, we hold that this assignment of error is well taken. However, such holding does not entitle the appellant to a reversal unless the other assignments of error or some of them are well grounded. We find no merit in the other assignments of error.

Appellant's second assignment of error challenges the ruling of the court on that portion of the motion for new trial which complained of the refusal to reopen the case. It is well

settled that the decision of the court on a motion to reopen a case, especially after it has been finally submitted, will be disturbed only upon a clear showing that the court abused its discretion. Allemang v. White, 230 Iowa 526, 536, 298 N. W. 658, and cases cited therein. The record herein fails to persuade us that there was any such abuse of discretion as would warrant interference by us. Accordingly, we find no merit in this assignment of error.

█ The third assignment of error challenges the ruling of the court upon that portion of the motion for new trial which asserted that newly discovered evidence had been secured relating to the cost of coal that would have an important bearing upon the testimony of plaintiff's husband, and the fourth assignment of error complains of the ruling on that portion of the motion which asserted that new evidence had been discovered relative to admissions of plaintiff and the witness Manning. We find no merit in either assignment. In the case of Simons v. Harris, 215 Iowa 479, 482, 245 N. W. 875, 876, we state: "In the second place, newly discovered evidence as set forth in the motion for new trial does not authorize a new trial if it is merely cumulative or of an impeaching character." In the recent case of Eller v. Paul Revere Life Ins. Co., 230 Iowa 1255, 1260, 300 N. W. 535, 538, we state: "This court has held time and again that the granting of a new trial rests largely in the sound discretion of the trial court, and that we will not interfere except in a reasonably clear case of abuse of discretion." These rules are too well established as to require discussion. In view of them, we see no occasion to interfere with the rulings of the court herein.

█ The fifth and final assignment of error complains of the ruling on that part of the motion for new trial which challenges the court's decision on defendant's counterclaim. This, in effect, presents the question of the court's decision on a disputed question of fact concerning the terms of the oral contract of purchase, whether payment was to be made in cash or by delivery of coal. In the case of City of Cherokee v. Aetna Life Ins. Co., 215 Iowa 1000, 1004, 247 N. W. 495, 497, we state: "This court has repeatedly held that, where the cause is tried to the court without a jury, the findings of the trial court on

questions of fact are as conclusive and binding upon the Supreme Court as the verdict of a jury, and such findings will not be reviewed or disturbed by the Supreme Court where there is any evidence to substantiate them." Pursuant to this pronouncement, we are of the opinion and hold that the evidence herein was in conflict, there was substantial evidence to sustain the decision of the trial court and the weight of the evidence opposed to that upon which the court relied is not such as would warrant or justify interference by us.

By reason of the foregoing, the judgment is affirmed.— Affirmed.

CHIEF JUSTICE and all JUSTICES concur.