EDWARD BURKE, JR., appellant, v. EDWARD REITER et al., appellees.

No. 47623.

(Reported in 42 N.W.2d 907)

JUNE 13, 1950.

John D. Randall and Richard F. Nazette, both of Cedar Rapids, for appellant.

Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, Frank W. Less, of Cascade, and Rees & Remley, of Anamosa, for appellees.

SMITH, J.—The collision occurred Christmas Eve, 1947 on highway 151 between Anamosa and Springville at or near the easterly fork of the Y-intersection where highway 261, coming north from Martelle, joins 151. The location is known as Martelle Corners.

Plaintiff was traveling from Anamosa southwesterly toward Springville and Cedar Rapids; defendants in the opposite direction. Highway 151, going toward Springville, just about as it reaches this fork of the intersection, curves to the right from a southwesterly to a more westerly direction. One not taking that curve but going straight forward would leave highway 151 and enter highway 261 which then curves slightly to the left (southward) toward Martelle.

Contrariwise, to one coming *from* Springville *toward* Anamosa on highway 151, the curve in 151 at this point commences farther west and is to the left from an easterly to a more northeasterly course. It seems quite likely the collision was at a point where the union of the two highways results in a wider expanse of paving before they become completely merged. Plaintiff was just entering or about to enter the curve; defendant leaving or about to leave it.

It will be seen this is not an intersection case in the usual sense, since neither party was traveling or intending to travel on highway 261. Reference to it is principally for the purpose of identifying the location and describing the surroundings. The situation is such that one intending to continue on 151 toward Springville might, under unfavorable conditions of visibility, miss the turn and enter 261. There are no obstructions to the view in any direction, however, and the ground is practically level.

The cars collided between nine and ten p.m. The night is described as "cold and crisp." Plaintiff testified the "visibility was good" on all the road traveled. However, there is also testimony of some "rolling" fog.

Plaintiff, age thirty-one, accompanied by his wife, was driving his 1938 Ford sedan. They were returning home to Cedar Rapids from a brief visit to Mrs. Burke's folks at Wyoming (east of Anamosa) where they had earlier gone to take Christmas presents to her children.

Defendant Edward Reiter, Jr., age nineteen, of near Cascade, Iowa, was driving his father's (defendant Edward Reiter's) 1947 Dodge sedan. He and his young friends, Richard Kurt and Melvin O'Shea, had driven down that evening through Anamosa and Springville to Cedar Rapids to meet his sister and her husband who were coming home for a visit. Returning, the three boys were in the front seat. Mr. and Mrs. Tegeler, the sister and husband, sat behind.

There is some variance in testimony as to the respective speed of the cars and as to the dimming of lights. However, the unanimous testimony of the witnesses who arrived after the collision places both cars on the southeasterly side of the pavement, that is, on the defendant's right side of the center line as they stood after colliding. Pictures were taken before plaintiff's car was moved and after various officials and others arrived—the sheriff of Jones County and his deputy, the marshal and deputy marshal of Anamosa, a near-by neighbor who heard the crash and hurried to the scene, and the operator of a wrecker service from Anamosa. They all (including the pictures) testified plaintiff's car was over the center line of the highway.

The testimony of the neighbor, who was probably first on the scene, is fairly typical: "The Ford car [plaintiff's] would be to the left of the center line of the highway if one were proceeding from Anamosa to Springville and Cedar Rapids. When I saw the Dodge car and the Ford they were right head on. And the Dodge car would be on the right-hand side if one were proceeding from Cedar Rapids to Anamosa."

The deputy sheriff said: "The Ford was headed south with its right rear wheel setting approximately on the center line of what would be highway 151 in that intersection. The rest of that car was to the left of the black line. The Dodge [defendants'] was facing north, on its right side of the black line. The front—the left front wheel, the nearest part of that car to the center line of 151 was approximately two feet from that center line. The back end of the car, the rear, was swerved around so that it was probably four feet from that center line."

The testimony of the marshal and deputy marshal of Anamosa, the photographer, the sheriff, and the wrecker serviceman, was to the same general effect. There is little contradiction of this testimony.

Although there is some confusion in plaintiff's testimony at one point, he does quite clearly claim he was not on the left-hand side of the center line "from the time I first observed the other car coming toward me and the time I collided with it."

Plaintiff produced four witnesses who were in a car immediately following defendants' Dodge. One testified both plaintiff's and defendants' cars were "astraddle of the black line" immediately after the collision. Another said "looked to me like they hit about in the middle of the road—I wouldn't say for sure." The first of these witnesses said on cross-examination: "We were commenting on how good the Dodge car was being driven. * * * We just noticed that it stayed on its own side of the road. I mean, that it didn't go over the line or anything."

The driver of this following car testified: "Well, as we rounded into this corner, I saw the other car coming from the other direction rounding the corner, saw its headlights, and so I just more or less looked at the black line, and the car ahead was setting on my own side for sure. The next thing it looked like they were going to hit. So I looked for a place to go to

miss them. * * * I could see the highway on the left-hand side of me and the car ahead of me, so I turned to the left and went around them on the left-hand side of me—of the pavement." On cross-examination he said: "I was on my side of the road until just before I saw the accident was going to happen, and the last I saw the Dodge it was on its side of the road." This witness said he made no observation of the location of the cars after the collision. He was busy flagging down approaching cars and assisting in caring for the injured.

Plaintiff pleads as one specification of proximate negligence that defendants' car was driven with "a light whose glaring rays were projected" into his own eyes. However, he does not testify it caused him to cross the middle line nor does he admit he did cross it. The headlight issue was not even submitted to the jury.

It is impracticable to set out the testimony with any degree of fullness. The legal proposition confronting us does not require it. The court denied defendants' motion to direct. The jury returned a verdict for plaintiff. Defendants filed motion for judgment notwithstanding verdict, which was overruled, and for new trial, which was sustained. This appeal by plaintiff followed.

The trial court based the decision principally on the ground that the verdict was "so much in conflict with the great weight of the evidence as to require the closest scrutiny in determining whether" the "inherent power of the Court to set aside verdicts" should be exercised.

 This poses the one problem confronting us on this appeal. It is for us—not to pass on the merits as to which, if either, party should recover—but to determine whether the trial court abused that discretion which the law concedes to trial courts in proper cases.

I. The determination whether to exercise this power or discretion is one of the most profoundly delicate and difficult decisions for a court to make. The usual sanctity that attaches to a jury verdict, the danger or possibility of personal prejudice or bias or sympathy in the heart of the presiding judge, the sacred rights of the parties on both sides to a fair and impartial jury trial—all these are involved. Who enters this domain of judicial procedure must indeed divest himself, so far as humanly possible, of every consideration except that of his duty under

the record to insure that each party gets one and only one fair trial.

The warning signals running through our decisions against abuse of this inherent power or discretion of trial courts were marshalled in the dissenting opinion in In re Estate of Goretska, 234 Iowa 1080, 1092 et seq., 13 N.W.2d 432.

Nevertheless the existence of the power is undoubted. Our court has always recognized it. McKay v. Thorington, 15 Iowa 25; In re Estate of Goretska, supra, and cases therein reviewed; Brunssen v. Parker, 227 Iowa 1364, 291 N.W. 535; In re Estate of Murray, 238 Iowa 112, 115, 26 N.W.2d 58.

II. The trial judge, having expressed the opinion that the verdict was "in conflict with the great weight of the evidence," added that he still believed there was a jury question and proceeded to examine the record for an explanation of the jury's apparent failure to weigh the evidence properly.

We think he made the proper approach to the problem and that there is sufficient ground in the record to justify scrutiny. This is not to deny or interfere with the jury's status as the final authority in weighing evidence. It is rather a performance of the judicial duty to make sure the jury's judgment has not been swayed (unconsciously, perhaps) by some improper consideration or influence. The navigator must be sure his compass is free from diverting magnetic influence.

The fact there was sufficient conflict in the evidence to present a jury question did not preclude the court from exercising this inherent power. Bloomfield State Bank v. Seabury, 200 Iowa 37, 204 N.W. 259; Porter v. Madrid State Bank, 155 Iowa 617, 136 N.W. 666.

III. It may perhaps be doubted whether the "inherent power" of the court needed to be invoked here. See Whiting v. Cochran, 241 Iowa 590, 41 N.W.2d 666. Rule 244(f) of our Rules of Civil Procedure prescribes as one ground for granting a new trial: "That the verdict * * * is not sustained by sufficient evidence * * *." The rule is merely a statement of the statutory ground prior to the adoption of the Rules. Section 11550(6), Code, 1939.

However, we are aware of no decision in which we have held this statutory provision either enlarged or modified the common-

law rule of inherent power (see Bottineau Land & Loan Co. v. Hintze, 150 Iowa 646, 648, 649, 125 N.W. 842); or that it was designed to limit the function of the jury as the ultimate authority where the facts are in dispute.

Whether proceeding under its inherent power or under the statutory (now court) rule, the trial court here proceeded properly in seeking possible reasons for the jury verdict which seemed so clearly contrary to the weight of the evidence.

■ IV. This search revealed several matters the trial court thought may have contributed to the apparent miscarriage of justice: 1. Undue emphasis placed by the instructions upon speed; 2. Undue emphasis by counsel in final argument to the jury upon the contrasting financial and economic condition of the respective parties; 3. Errors in overruling objections of defendants to certain leading questions; 4. The size of the verdict and the short time of jury deliberation in view of the length of the trial. Comment on 3 and 4 is unnecessary. They pertain to matters not likely to arise on retrial.

It is not contended or necessary that any one of these matters alone constituted reversible error. Holland v. Kelly, 149 Iowa 391, 393, 128 N.W. 338; Morton v. Equitable Life Ins. Co., 218 Iowa 846, 850, 254 N.W. 325, 96 A. L. R. 315. The trial court properly pointed them out and made them of record as reasons supporting its conclusion. Hensley v. Davidson Bros. Co., 135 Iowa 106, 111, 112, 112 N.W. 227, 14 Ann. Cas. 62. In that respect this case is much stronger than the Goretska case, supra.

■ V. The court instructed generally on speed as pertaining to general specifications of negligence in both the petition and counterclaim; and, in addition, submitted a later specific instruction upon plaintiff's specification of defendants' alleged negligence in failing to drive "at a careful and prudent rate of speed on approaching and going into a curve." See section 321.288(3), Code, 1946. No specific instruction was given submitting defendants' specification of plaintiff's alleged negligence in failing to drive "at a careful and prudent speed under the conditions then existing."

In commenting on the giving of the second instruction above-mentioned the trial court said: "This tended to overem-

phasize the contention of the plaintiff as to speed, and \* \* \* it does appear to this court that it has an element of unfairness to the defendants, and may have misled the jury," citing 64 C. J. 689, Vance v. Grohe, 223 Iowa 1109, 274 N.W. 902, 116 A. L. R. 332, 38 Am. Jur. 1072, and Wilkins v. Keokuk Electric Co., Iowa, 174 N.W. 231.

While there is no criticism of the form of the specific instruction it is doubtful if the record required or justified it and at least it should have been balanced with a similar one covering defendants' specification of negligence "under the conditions then existing." Plaintiff, too, was "approaching and going into a curve." That was one of the "conditions then existing."

Plaintiff argues at this point the trial court was unfair to plaintiff in failing to submit the specification of negligence based on defendant-driver's failure to dim his lights. The argument is unsound. We need not determine whether failure to instruct on this specification was error. Obviously we cannot offset one unfairness in one direction against another the other way.

The trial court concedes the giving of the additional speed instruction was not in itself reversible error. The new trial was granted actually on two propositions—one, that the verdict was not sustained by sufficient evidence, and two, that upon the whole record a new trial should be granted in the interest of justice. Both depended on an exercise of discretion and our sole province is to determine whether that discretion was abused.

VI. The trial court was of opinion the alleged undue emphasis placed by plaintiff in argument upon the comparative financial and economic status of plaintiff and defendants was highly prejudicial. Of course, the earnest advocate must be allowed some latitude in referring to matters in the record which have appeal to human feeling and sympathy. Such discussion frequently adds drama and interest to an otherwise drab proceeding, without undue injury to either party.

Of course, earning power is important to be shown and proper to be argued in connection with the claim of damages for its injury or destruction. But it has no place in the process of determining which, if either, party is entitled to recover.

By the same token, any *comparison* of respective earning

powers or financial or economic conditions is entirely improper. The temptation to resort to such comparison is strong. It must usually be left to the trial court in the exercise of judicial discretion to determine whether proper bounds have been overstepped and, if so, whether serious prejudice has resulted. The trial court here in exercising, has not abused, that discretion.

It was improper for plaintiff's counsel to argue: that *his* client was a machinist "not working on a seven-hundred-acre farm helping to take care of the feeding of five hundred steers. * * * we weren't able to go to any high-falutin doctor. * * * With his fine Dodge he [defendant Edward Reiter, Jr.] ran Eddie down with his little 1938 Ford." And again: "Why should I try to run Mr. Reiter down because he has seven hundred acres of land and five hundred steers, even though when you use common arithmetic that is two hundred and forty thousand dollars of anybody's money." There is more to the same effect.

All this had nothing to do with the measure of damages of either party for loss of earning power due to the other's negligence. But it may have exercised a potent, though improper, influence in the jury's determination as to which party was entitled to recover. The trial court, in a position to appraise the situation and result, expressed the conclusion that it "could well have been important in the denial of a fair trial to defendants."

The court cites Sullivan v. Chicago, R. I. & P. Ry. Co., 119 Iowa 464, 93 N.W. 367, Vanarsdol v. Farlow, 200 Iowa 495, 499, 203 N.W. 794, 795, and First Nat. Bk. v. Pleggenkuhle, Iowa, 183 N.W. 376. Precedents are of little value except as they state general principles of law. Facts differ, one case from another.

But in the Vanarsdol case Justice Albert wisely said: "This practice of referring to the worth or poverty of the respective litigants has been too often condemned by this court to need citation of authority. The law knows no such thing as a rich man or a poor man, but seeks to treat all alike, to the end that even justice may be dispensed."

Plaintiff here suggests this argument was elicited by defendants' unfair references in their argument to claimed evidence of liquor in plaintiff's car and to the matter of insurance. The question of the fairness or unfairness of defendants' argu-

ment in those matters is not before us, though under the record the liquor argument seemed based on suspicion rather than evidence. See Smith v. Pine, 234 Iowa 256, at page 265, 12 N.W.2d 236.

But unfair argument on the other side did not justify plaintiff's. Two wrongs do not make a right. We cannot balance one against the other. Plaintiff's argument was not a reply to defendants'. He had his proper way to meet unfair tactics. An equally improper attack on a different subject was not proper. The discussion in Doyle v. Burns, 138 Iowa 439 (commencing near bottom of page 448), 114 N.W. 1, is somewhat pertinent here though relating to a much more serious situation.

VII. The rule is well-settled that "the discretion of the trial court to order a new trial is greater than that of the appellate court." Lewellen v. Haynes, 215 Iowa 132, 134, 244 N.W. 701, 702. See also Brooks v. Brotherhood of American Yeomen, 115 Iowa 588, 88 N.W. 1089; Bletzer v. Wilson, 224 Iowa 884, 888, 276 N.W. 836. And the granting of a new trial will not be interfered with on appeal except in a clear case of abuse of discretion. Modern Heat & Power Co. v. Bishop Steamotor Corp., 239 Iowa 1267, 1271, 34 N.W.2d 581, citing Egy v. Winterset Motor Co., 231 Iowa 680, 688, 2 N.W.2d 93, 97, In re Estate of Hollis, 235 Iowa 753, 759, 16 N.W.2d 599, and 5 C. J. S., Appeal and Error, section 1619.

We have often said "we are more reluctant to interfere with the granting of a new trial than with the refusal to allow the relief." Greene v. Lagerquist, 217 Iowa 718, 719, 252 N.W. 94; Williams v. Kearney, 224 Iowa 1006, 1009, 278 N.W. 180; In re Estate of Hollis, supra, and cases therein compiled (235 Iowa at pages 759, 760).

VIII. Finally it is urged by plaintiff that defendants, knowing of misconduct, waived same by proceeding with the trial and making no objection until after verdict. Riech v. Bolch, 68 Iowa 526, 527, 27 N.W. 507, Foedisch v. Chicago & N. W. Ry. Co., 100 Iowa 728, 69 N.W. 1055, and Crandall v. Mason, 198 Iowa 139, 197 N.W. 454, are cited.

These decisions are not in point. The trial court's ruling here is not based primarily on the misconduct and other considerations pointed out, but on the proposition that the verdict was

so much "in conflict with the great weight of the evidence." These other matters were suggested as having a cumulative effect in accounting for the apparent disregard by the jury of practically unquestioned evidence that the collision occurred on defendants' side of the paved highway. There was no waiver.

We have gone into the record and arguments at considerable length, not merely because of the very real importance of the case to the immediate litigants, but also because of the importance of the legal principles involved. The dividing line between the proper exercise and the abuse of a trial court's discretion in interfering with the jury's prerogative of resolving fact questions is not always easy to define. Constant vigilance is necessary to prevent transgression by either court or jury.

Study and analysis of the record here has convinced us the action of the trial court in granting a new trial was not an abuse of discretion and should be affirmed. It is so ordered.— Affirmed.

All JUSTICES concur.