Gloria J. MILKS, Appellant,

v.

IOWA OTO–HEAD & NECK SPECIAL-
ISTS, P.C., and Felix Edward Gon-
zales, M.D., Appellees.

No. 93–581.

Supreme Court of Iowa.

July 27, 1994.

Bernard L. Spaeth, Jr. and Megan M. Antenucci of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Francis Fitzgibbons and Harold W. White of Fitzgibbons Brothers, Estherville, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This case presents questions concerning our appellate jurisdiction and the trial court's discretion in rulings involving an expert witness's trial testimony. We conclude we have jurisdiction over this appeal and affirm the trial court's judgment.

I. *Background facts and proceedings.* Plaintiff Gloria Milks brought this medical malpractice action against defendants Dr. Felix Gonzales and his professional corporation, Iowa Oto–Head & Neck Specialists, P.C. ("Gonzales"). Gonzales had performed micro-surgery on her throat in the area of her larynx on September 19, 1989. He had recommended the surgery following his diagnosis of a pedunculated granuloma, or pocket of infection, in the back of Milks's throat. Milks alleged that Gonzales's negligence in performing the surgery caused permanent damage to her vocal cords.

A factual issue at trial was whether Dr. Gonzales injured and removed tissue from plaintiff's true vocal cords, which are found in the front part of the throat, while doing surgery that was supposed to remove tissue located in the back of her throat.

During pretrial discovery, Gonzales informed Milks that he intended to call Dr. R.B. Wyatt, a pathologist at the hospital where the operation occurred, as an expert witness. At a discovery deposition taken by plaintiff, Dr. Wyatt testified that the tissue removed by Gonzales was consistent with tissue originating from the area containing the vocal cord.

At trial, however, Dr. Wyatt testified that the tissue was "not consistent" with tissue originating from the true vocal cord. Milks objected on grounds that the opinion testimony was not within the fair scope of Dr. Wyatt's prior deposition testimony. She asked that the objection precede the new opinion testimony and that the testimony be stricken.

The district court sustained Milks's objection. But it denied the motion to strike as untimely. The court observed that in view of a rather complicated record it would be "of little value to try to resurrect what's been presented to the jury and then try to ask them to disregard it."

After the objection was sustained, Gonzales later adopted a hypothetical approach to his direct examination of Dr. Wyatt. He twice asked Dr. Wyatt what he would expect if the muscle tissue came from the true vocal cord area. The district court overruled

Milks's objections to the questions. At the next recess, Milks moved to strike Dr. Wyatt's opinion testimony that responded to the questions. The district court noted that the answers given could be construed as different from the deposition testimony, but the questions were not improper and the objections were properly overruled. The motion to strike also impliedly was overruled.

At 8:30 p.m. on January 26, 1993, the jury returned a verdict in Gonzales's favor. On January 27, the verdict forms were filed with the clerk of court and the district court entered judgment in favor of defendants. The district court incorrectly noted that the jury returned its verdict on January 27. On February 8, Milks moved for a new trial. The court overruled the motion on March 5.

Milks filed a notice of appeal on April 7. Gonzales filed a motion to dismiss the appeal, contending for the first time that plaintiff's motion for new trial had been untimely and thus did not extend the time for filing a notice of appeal. Attached to the motion was the district court's certification under Iowa rule of appellate procedure 10(d) that the jury returned its verdict on January 26. We ordered that the motion to dismiss would be submitted with the appeal.

II. *Timeliness of plaintiff's motion for new trial.* We first address defendant Gonzales's motion to dismiss the appeal. Gonzales contends that the time for plaintiff Milks to file a motion for new trial began to run on January 26, 1993, the day the jury returned its verdict. Therefore, because Milks did not file her motion for new trial until February 8, Gonzales argues that she failed to file within the ten-day limit of Iowa rule of civil procedure 247.[1]

The timeliness of Milks's motion for new trial bears on our jurisdiction to hear this appeal. If the motion was timely, we have jurisdiction because she filed her notice of appeal within 30 days after entry of the ruling on her motion for new trial as required by Iowa rule of appellate procedure 5.

■■■ If, however, Milks's motion for new trial was untimely, the thirty-day period to file a notice of appeal began to run immediately upon entry of the judgment on January 27, 1993. In that event, we would have no jurisdiction to hear her appeal because her notice of appeal (filed April 7) was filed later than thirty days after entry of judgment. Want of subject matter jurisdiction may be taken advantage of at any stage of the proceedings and cannot be conferred by waiver, estoppel, or consent. *Qualley v. Chrysler Credit Corp.*, 261 N.W.2d 466, 468 (Iowa 1978). The timeliness of a notice of appeal is mandatory and jurisdictional and cannot be extended by the filing of an improper motion for new trial. *Id.* at 471.

The question we must answer is whether the period for filing a motion for a new trial begins to run when the jury returns a verdict or when the verdict is file-stamped in the district court clerk's office. Iowa rule of civil procedure 247 provides:

> Motions under R.C.P. 243 [judgment notwithstanding the verdict] and 244 [new trial] ... must be filed within ten days after the *verdict, report, or decision is filed, or the jury is discharged, as the case may be,* unless the court, for good cause shown and not ex parte, grants an additional time not to exceed thirty days.

(Emphasis added.)

As applied to the facts in this case, rule 247 seems ambiguous. The jury returned its verdict, and thereby was presumably discharged, on the evening of January 26. However, the verdict was not stamped as filed with the clerk of district court until the next day, January 27. The court also entered judgment on the verdict on January 27.

---

1. For purposes of computing the day by which a motion must be filed, the first day is excluded and the last included, unless the last day falls on a Saturday, Sunday, or legal holiday, in which case "the time shall be extended to include the next day which is not a Saturday, Sunday, or legal holiday...." Iowa Code § 4.1(34) (1993).

In the present case, the possible dates from which the time for filing a motion for new trial began to run were Tuesday, January 26, and Wednesday, January 27. Counting the ten-day period from January 26, the deadline would fall on Friday, February 5. Counting the time from January 27, the ten-day period concludes February 6, but because that is a Saturday, the date would be extended to Monday, February 8, the day on which Milks in fact filed her motion.

The phrase "as the case may be" seems to be intended to clarify the rule, but we are unable to discern any significance to it.

■ The determining date for the timeliness of a motion for new trial ordinarily is the date on which the jury returned its verdict, not when the final judgment was entered. *Qualley,* 261 N.W.2d at 470; *Schmatt v. Arenz,* 176 N.W.2d 771, 774 (Iowa 1970); *Selby v. McDonald,* 219 Iowa 823, 829, 259 N.W. 485, 488 (1935); *accord Peek v. Meadors,* 255 Ark. 347, 500 S.W.2d 333, 334 (1973); *Mosher v. Levering Invs., Inc.,* 806 S.W.2d 675, 676 (Mo.1991) (en banc) ("The entry of a judgment on a jury verdict is a ministerial act and failure to formally enter the judgment does not affect the time requirements imposed by *Rule 78.04* [analogous to Iowa R.Civ.P. 247]."); *Ames v. Parrott,* 61 Neb. 847, 86 N.W. 503, 506–07 (1901) (Pound, J.) ("There is a clear and well-established distinction between rendition [of a verdict] and entry of a judgment.... The date of the entry upon the journal would be presumed to be the date of rendition, but, where the record shows these dates to be different, the latter alone is to be considered."); 58 Am.Jur.2d *New Trial* § 481, at 444 (1989) ("Under many statutes or rules of practice, the time within which a motion for new trial must be filed is calculated from the date of the rendition of the verdict or decision, and not from the date of the entry of judgment.").

The rationale of this rule is that once the jury returns its verdict, the parties are usually on notice of the result for purposes of determining whether to file a motion for a new trial. In *Qualley,* for instance, the court concluded that "when the court [in a nonjury case] issued its findings and conclusions it was obvious to plaintiff on which facts and law the court's impending judgment entry would be based." 261 N.W.2d at 470.

When the action of the judge or the jury has failed to put the parties on notice of the basis of the verdict, report, or decision, we have refused to hold that the time for a motion for new trial has commenced. For example, in *Egy v. Winterset Motor Co.,* 231 Iowa 680, 686, 2 N.W.2d 93, 96 (1942), the trial court issued an informal decision that failed to provide the losing party with notice of what facts and conclusions the court's later judgment would be based upon. Because the final entry of judgment was necessary for determining whether to file a motion for new trial, we concluded that the time began to run only upon such entry. *Id.* at 687, 2 N.W.2d at 97.

Similarly, the time for filing a motion for new trial does not begin to run if the jury has filed a sealed verdict. *Trainer v. Kossuth County,* 199 Iowa 55, 60, 201 N.W. 66, 68 (1924). Such a requirement would be "absurd ..., for no one could ascertain what was in the verdict until it was opened." *Selby,* 219 Iowa at 832, 259 N.W. at 490 (discussing *Trainer*).

Here, although the verdict was not sealed and the parties and counsel apparently were not present when the verdict was returned, it also appears that counsel for both parties had notice of the verdict on the evening of January 26. It therefore may seem appropriate to conclude that the time for plaintiff to file a motion for a new trial commenced at that point. However, we decline to so conclude. Rule 247 states that the time begins to run when the verdict is filed, not merely rendered. When the verdict is filed, it is dated. This notation is more reliable than the parol evidence that the jury physically rendered the verdict. Although there was no dispute in this case that the jury returned its verdict on the evening of January 26, proving the exact moment of the jury's rendition of the verdict form presents a greater risk of disagreement than producing the filed verdict with the clerk of court's stamp. This procedure is required under Iowa rule of civil procedure 204, which provides that verdicts "shall be filed with the clerk and be entered of record...."

Defendant contends that this conclusion strikes the words "or the jury is discharged" from the text of rule 247. Although our conclusion under the present facts does seem to preclude the use of the discharge of the jury as a point from which time to file a motion for new trial is measured, we can find no other manner in which to interpret this rule sensibly.

As it stands, rule 247 affords two categories of events from which the court may measure time to file a motion for a new trial, the first being the time at which "the verdict, report or decision is filed," and the second being the time at which "the jury is discharged." The only guidance the rule provides as to which avenue to take is the phrase "as the case may be." The parties have provided us with no authorities explaining how this phrase should be interpreted in this context, and we have found none.

Just as the date of the filing of the verdict is more reliably determined than the date of its rendition, so is that date more reliably determined than the date of the discharge of the jury. In this case, for instance, the record contains no official notation concerning when the district court discharged the jury and the parties have failed to state when it occurred. The jury's verdict, by contrast, must be filed with the clerk pursuant to rule 204.

This result is consistent with the decision of the court of appeals in *In re Marriage of Fountain*, 492 N.W.2d 707, 710 (Iowa App. 1992), which concluded that under rule 247, posttrial motions pursuant to that rule must be filed within ten days after the verdict, report, or decision is *filed*. We also believe this result " 'does least violence to the text' " of rule 247. *Polk County Conference Bd. v. Sarcone*, 516 N.W.2d 817, 820 (Iowa 1994) (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 529, 109 S.Ct. 1981, 1995, 104 L.Ed.2d 557, 576 (1989) (Scalia, J., concurring in the judgment)).

■ Therefore, we conclude that the time for filing a motion for new trial commences upon the filing of the jury's verdict with the clerk of court. Because plaintiff Milks filed her motion for new trial within ten days of the date that the jury verdict was filed, her motion was timely and extended her time to appeal to thirty days following the district court's ruling on the motion. Be-

cause her notice of appeal was timely as measured against that date, we have jurisdiction over this appeal.

Defendants' motion to dismiss the appeal is overruled.

III. *Dr. Wyatt's testimony.* Plaintiff next contends that the district court erred in refusing to strike Dr. Wyatt's testimony at trial on behalf of defendants given during a morning session and overruling her objections to defense counsel's questions during his afternoon trial testimony. She asserts that this testimony was inconsistent with Dr. Wyatt's deposition testimony and therefore was inadmissible due to Iowa rule of civil procedure 125(d).[2] In his pretrial discovery deposition taken by plaintiff, Dr. Wyatt testified that tissue defendant removed from plaintiff's throat was consistent with tissue from the vocal cord area.

In its order denying plaintiff's motion for a new trial, the district court concluded that (1) plaintiff's motion to strike and objections failed to provide the court with the procedural vehicle to remedy any defect contained in defendant's direct examination of Dr. Wyatt; (2) Dr. Wyatt's testimony, although "subtly different" from his deposition testimony, was not so inconsistent as to deprive plaintiff of a fair trial under the circumstances of the case; and (3) plaintiff was not denied a fair trial because substantial justice was effectuated and plaintiff suffered no unfair prejudice. We agree.

■ As in all evidentiary matters, the trial court has broad discretion in making rulings on expert testimony under rule 125. *Beeman v. Manville Corp. Asbestos Disease Compensation Fund*, 496 N.W.2d 247, 253 (Iowa 1993). We will disturb its rulings on such matters only upon a finding of abuse of that discretion. *Id.* at 253–54.

■ A. An objection to the admission of evidence must be made as soon as the grounds for the objection become apparent.

---

**2.** Milks further argues that because the trial court sustained her objection in the morning, it erred as a matter of law in failing to sustain her objection to similar testimony in the afternoon. She apparently characterizes the error in this way to avoid the abuse-of-discretion standard

that ordinarily inheres in evidentiary rulings. Because she neither cites any authority for this position nor gives any independent reason supporting it, we conclude that it is without merit and decline to address it further.

Iowa R.Evid. 103(a)(1); *Wickman v. Illinois Cent. Ry. Co.,* 253 Iowa 912, 920–21, 114 N.W.2d 627, 632 (1962). If the grounds for the objection are disclosed only after the testimony is given, the proper procedure is to move to strike and have the jury admonished to disregard the objectionable statement. John W. Strong, *McCormick on Evidence* § 52, at 200–01 (4th ed. 1992). "The initiative is placed on the party, not on the judge.... [A] failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver upon appeal of any ground of complaint against its admission." *Id.,* at 200.

■ 1. With respect to the morning testimony, plaintiff's objection and motion to strike were not made at the time the grounds for them first became apparent. Instead, they were made only after Dr. Wyatt rendered his opinion in response to one question, explained why his opinion differed from his deposition testimony in response to another question, and was then asked his opinion a second time. As the trial court stated, "There was no way to neatly alert the jury to the testimony and instruct them to disregard it."

■ 2. With respect to the afternoon testimony, plaintiff made her objections prematurely because the questions to which they were interposed were not themselves objectionable:

BY MR. FITZGIBBONS [for defendants]:

Q.: Doctor, if the muscle tissue came from the true vocal cord area, what would you anticipate would be the problem?

MS. ANTENUCCI [for plaintiff]: Excuse me, your Honor. I am going to object based upon all of the reasons stated previously just before the lunch hour and renew my objection on that same ground [that Dr. Wyatt's testimony in response to the pending question would be inconsistent with his deposition testimony in violation of rule 125(d)].

. . . .

THE COURT: Overruled. You may answer.

. . . .

[BY MR. FITZGIBBONS:]

Q.: Doctor, if the muscle came from [the area of the true vocal cord], how would you expect that would relate to Mrs. Milks' voice and ability to speak?

MS. ANTENUCCI: Your Honor, I object, again based on all the reasons stated outside the presence of the jury prior to the lunch hour.

THE COURT: Overruled. You may answer.

These questions were not improper because they did not necessarily seek to elicit testimony inconsistent with Dr. Wyatt's prior deposition testimony. Even if the answers to these questions were excludable under rule 125(d), the trial court had no opportunity to make such a ruling because plaintiff made no motion to strike immediately following each answer. Although the trial court had sustained plaintiff's objection on the substantive issue of whether Dr. Wyatt could offer testimony inconsistent with his deposition, the absence of timely motions to strike hindered the court in fully implementing that ruling during the afternoon testimony.

B. Apart from the plaintiff's failure to make proper motions to strike, we believe the trial court was within its discretion in admitting Dr. Wyatt's testimony over plaintiff's rule 125(d) objection.

Rule 125(d) provides:

*Expert testimony at trial.* To the extent that the facts known, or mental impressions and opinions held, by an expert have been developed in discovery proceedings under subdivisions "*a*" (1) or (2) of this rule, the expert's direct testimony at trial may not be inconsistent with or go beyond the fair scope of the expert's testimony in the discovery proceedings as set forth in the expert's deposition.... However, the expert shall not be prevented from testifying as to facts or mental impressions and opinions on matters with respect to which the expert has not been interrogated in the discovery proceedings.

■ In his deposition, Dr. Wyatt stated that it was his opinion that the tissue defendant Dr. Gonzales removed was from the "vocal cord area," but he qualified his an-

swer, stating that "there isn't any way that that tissue is marked with absolute specificity about it coming from that area."

At trial, defendant asked Dr. Wyatt what he would expect to find in the tissue he examined if it came from the true vocal cord itself. Dr. Wyatt responded that the true vocal cord consists of fibro-elastic connective tissue and that he found no such tissue in the plaintiff's samples.

Dr. Wyatt explained this possible shift in his testimony during defendant's offer of proof following plaintiff's sustained objection to his morning testimony. He stated that he arrived at this conclusion after further study and believed that it was "more precise and accurate" than his deposition testimony, not inconsistent with it. In his view, it reflected his increased understanding of the various tissues of the true vocal cord and the area surrounding it.

In overruling plaintiff's objections to defendant's questions during Dr. Wyatt's afternoon testimony, the trial court agreed, explaining that

at the deposition Dr. Wyatt essentially testified that he couldn't be certain precisely where this tissue came from, but it was consistent with tissue found in the vocal cords. And on direct examination he was simply asked essentially to tell us the origin of the tissue samples. He did not necessarily testify inconsistent with his deposition because he was not asked those questions in that manner during his deposition.

We agree with the trial court's and Dr. Wyatt's explanation of the claimed change in his testimony. It was not inconsistent with his deposition testimony for purposes of rule 125(d).

C. Finally, we believe that plaintiff Milks was not unfairly prejudiced or surprised by Dr. Wyatt's testimony. As the trial court observed in its ruling denying plaintiff's motion for new trial:

Rule 125(d) is not a rule of evidence. It is a rule of procedure. It excludes *direct* testimony by an expert at trial which is inconsistent with or beyond the fair scope of his or her discovery testimony. It does not exclude inconsistent testimony offered on redirect or cross examination.

. . . .

Dr. Wyatt was thoroughly cross-examined concerning his inconsistent pretrial testimony. Under the circumstances, there was no unfair prejudice.

Finally, Rule 125(d) does not prevent an expert from testifying at trial about matters not raised in discovery or those within the fair scope of the discovery proceedings. It is not a rule with sharp edges. It requires some latitude. Under all the circumstances, the testimony presented to the jury by Dr. Wyatt was not outside the bounds of that latitude. Plaintiff was not denied a fair trial.

Plaintiff also contends that had she known about Dr. Wyatt's new opinion, she would have engaged other experts. Yet even without that development, plaintiff had ample reason to look for other experts. The defense, not the plaintiff, designated and called Dr. Wyatt as a witness, but plaintiff chose to rely on him on a key factual point. Furthermore, he expressed some fairly strong reservations in his deposition about his conclusion that the tissue samples came from plaintiff's vocal cord. We agree with plaintiff that rule 125(d) is to avoid surprise to litigants, *see Lambert v. Sisters of Mercy Health Corp.*, 369 N.W.2d 417, 422 (Iowa 1985), but we believe that Dr. Wyatt—a defense witness—hardly surprised anyone by giving trial testimony that favored the defense.

IV. *Disposition.* Although we have jurisdiction to hear this appeal, we reject plaintiff's contention that the trial court erred in allowing Dr. Wyatt's testimony. The district court properly denied plaintiff's motion for a new trial. We affirm the judgment of the district court.

**AFFIRMED.**